*RECEIVED*
*DIST. OFFICE*
*LECC*
2001 SEP 11 AT 9:30 am

Walk —

EXHIBIT

| ES | WMD | UP | GC | NTJ |

**U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Baltimore District Office

10 S Howard Street, 3rd Floor
Baltimore, MD 21201
PH: (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270

### General

You have alleged that you were illegally discriminated against by your employer. We need the following information from you. Please note that whatever basis you are alleging in your charge, show that same basis for other individuals and your witnesses. For example, if you allege that you were discriminated against because of your sex, identify the sex of other individuals and witnesses. If you allege that you were discriminated against because of your age and race, identify the age and race of other individuals and witnesses. **If you need more space to answer any of these questions, you may attach additional sheets.**

**(Please think carefully before answering each question because you are asked at the end of the questionnaire to declare under penalty of perjury that your answers are correct. A false statement on any part of this questionnaire may be grounds for the Commission to dismiss your charge.)**

*This form is affected by the Privacy Act of 1974; see Privacy Act statement on the last page before completing this form.

Your name: Hester P Smith                     Date: 9-11-01
Address: 427 Palmer Terr.           City: Westminster
County: Carroll        State: Md  Zip Code: 21158
Home phone: (410) 875-5850   Work phone: (410) 396-2466
Social Security No: 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

**Name of employer or organization that discriminated against you:**
Name: Balto. City Police Dept.
Address: 601 E. Fayette St.          City: Balto.
State: Md  ZipCode: 21202   Phone (with area code): _____

Name of the head of the organization: Edward Norris
Title of the head of the organization: Police Commissioner

Your date of birth: 01-05-64  Age: 37  Sex: M  Race: W
National origin: United States  Religion: Catholic
What type of business does the employer engage in? Law Enforcement
Number of employees: ( ) 1 to 14   ( ) 15 to 100
( ) 101 to 200   ( ) 201 to 500   (X) More than 500

**Provide the name of an individual at a different address who we can contact if we are unable to reach you:**

Name: Kelly Smith   Relationship: Father
Phone: 410 243-6618
Address: 3100 Aspen C+

1. How have you been harmed?
   ( ) Not hired      ( ) Discharge         ( ) Demotion
   ( ) Promotion      ( ) Layoff            ( ) Other terms of
   (X) Transfer       ( ) Retirement            employment (specify)
   (X) Leave          ( ) Benefits          See Attached
   ( ) Pay            ( ) Harassment        ( ) Accommodation
   (X) Discipline     ( ) Sexual harassment     of a disability

2. Date of Harm: _____

3. What was the thing about you that motivated the employer or union to take whatever action it took against you?
   (X) Race           ( ) Pregnancy         ( ) National Origin
   (X) Color          ( ) Religion          ( ) Age
   ( ) Sex                                  ( ) Disability
   (X) Retaliation for having complained about discrimination.

4. If you believe you were discriminated against because of a disability, indicate:
   Brief description of disability: _____
   How long the disability will last: _____
   How the disability limits you in important daily activities (such as breathing, concentrating, sleeping, seeing, walking, lifting, and so on) _____
   _____
   _____

5.  Explain the facts that lead you to believe that your employer or union discriminated against you: __SEE ATTACHED__ _____

_____
_____
_____
_____

6.  Were you ever at any time asked to sign an agreement that required that all disputes between you and your employer be resolved solely through binding arbitration? Yes ( ) No ( )   If yes, attach a copy of the agreement. If you do not have a copy, where can we obtain one? Briefly describe the terms of the agreement as you understand them, and indicate when it was presented to you.

_____
_____
_____

____(Attach copies of any documents which you believe would support your discrimination claim.)

***ATTACH ADDITIONAL SHEETS AS NECESSARY***

(Complete as many of the following questions as apply)
Job title: __Detective (Police Officer)__ Date hired: __8.4.83__
Salary: __42,000__
Name of immediate supervisor: __Sgt William Rooker__
Supervisor's Title: __Sergeant__
Unit, department or division: __Northwestern District C.I.D. (Now Foxtrot Subsector)__
Number of employees in department or division: __16__
Number of employees with the same job title: __12__

Work phone: (   ) _____

Provide the following information for any witnesses who will provide evidence to support your allegations:
Name: __Chris Wade__                  Name: __Greg Robinson__
Home phone: (410) __823-6365__   Home phone: (443) __629-4385__
                                                     City
Work phone: (410) __396-2466__   Work phone: (410) __396-2466__
Address: __5271 Reisterstown__     Address: __5271 Reisterstown Rd__

{ See Reverse For Additional Witnesses }

David Chesauvront    Police Officer
410 396-2466
5271 Reisterstown Rd.

Lt. James Rood    Police Lieutenant
410-396-2466
5271 Reisterstown Rd

Garrea Gilmore    Police Officer
410-396-2466
5271 Reisterstown Rd

Nature of the evidence they will provide: _Same as Attached_

Nature of the evidence they will provide: _Same as Attached_

**Have you sought assistance from any other government agency, union, attorney or other source?** (X) yes  ( ) no
Name of source of assistance: _Balto. City EEOC_
Results, if any: _Pending_

**Have you filed an EEOC charge in the past?**   No _X_   Yes ___
If yes, provide: Date filed _____   Charge number _____
Organization charged _____

I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: _9-11-01_   Signature: _[signature]_

**PRIVACY ACT STATEMENT**
(This form is covered by the Privacy Act of 1974, Public Law 930579. Authority for requesting the personal data and the uses thereof are given below.)

FORM NUMBER/TITLE/DATE: EEOC FORM 233, INTAKE QUESTIONNAIRE, AUGUST 1987

AUTHORITY: 42 U.S.C. 2000e-5(b), 29 U.S.C. Section 626.

PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to avoid the intake of matters not within its jurisdiction.

ROUTINE PURPOSES: Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over potential charges, complaints or allegations of employment discrimination and to provide such pre-charge filing counseling as is appropriate. Information provided on this form may be disclosed to other state, local and federal agencies as may be appropriate or necessary to carry out the Commission's functions. This would include employment practices laws. Information may also be disclosed to Charging Parties in consideration of or connection with litigation.

WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

## AFFIDAVIT OF DETECTIVE CHESTER SMITH

Chester Smith, having been duly sworn states, as follows:

1. I am a resident of the State of Maryland and competent to testify to the matters set forth herein based on personal knowledge.

2. I am a detective with the Baltimore City Police Department.

3. I hereby swear under penalty of perjury that the contents of the attached memo are true and correct.

I, Chester Smith, on this __11__ day of September, 2001, declare, under the penalties of perjury, that the contents of the foregoing Affidavit are true and correct.

_____
Chester Smith
Detective, Baltimore City Police Department

SUBSCRIBED AND SWORN before me on this __11th__ day of __September__, 2001.

_____
Notary Public

My Commission Expires: __4/1/05__

POLICE DEPARTMENT
BALTIMORE, MARYLAND
**REPORT**
Form 92/95

                      DATE:
                      ASSIGNMENT: NWD CID/DIS

TO:

VIA:          Official Channels

FROM:      Detective Chester Smith D551
               Detective Chris Wade E025
               Detective Gregory Robinson F488

SUBJECT:    Discrimination

Sir,

The above listed Detectives are lodging a complaint of discrimination against The Baltimore City Police Department, Major Antonio Williams (Area II Commander), Lt. John Mack and Sgt. D.C. Moore of the Northwestern District C.I.D./ D.I.S. Unit for the following reasons:

The following incidents have occurred in this unit that can be verified since the inception of this unit.



- ~~Sgt. D. Oxyer transferred (reason unknown) replaced by Sgt. N. Warfield~~
- Sgt. J. Rood transferred (treated unfairly) replaced by Sgt. S. Young
- Sgt. D. Massey transferred to Western District CID/DIS replaced by Sgt. K. Butler
- Sgt. K. Butler promoted to Lieutenant replaced by Sgt. D. Gardner, Sgt. Gardner was not the first choice. Sgt. McFadden was the first choice. Lt. Mack stated to the Unit that Sgt. McFadden was coming.
- New Detective: Danette Swanson
- New Detective (Replace D. Cheauvront): Deion Hatchet

Synopsis:
- Sgt. Oxyer (white officer) replaced by a Sgt. Warfield (African American)
- Sgt. Rood (white officer) replaced by Sgt. Young (African American)
- Sgt. Massey (African American) replaced by Sgt. Butler (African American)
- Sgt. Butler (African American) replaced by Sgt. McFadden (African American) told to the unit he was coming, replaced by Sgt. Gardner (white officer)
- Danette Swanson (African American)
- Dawn Cheveron (white officer) replaced by Deion Hatchet (African American)

Additionally, there have been many incidents of harassment towards the above listed Detectives, including:

1. Det. Robinson was erroneously accused of placing flyers on vehicles requesting information about a previous homicide. This Detective had no knowledge of this incident and was told to write an administrative report (95);
2. Numerous times Det. Robinson and Detective Wade have been called into Lt. Mack's office in reference to allegations of slandering the Lieutenant. This is unfounded.
3. In July/August 2000 the States Attorney's Office raised questions about a shooting case in which the lead Detective was Det. A. Lansey. In this incident the above referenced Detectives were asked if they had any knowledge of a suspect being forced to give a statement concerning a photo array. The above referenced Detectives replied that they did have knowledge of Det. Lansey's concern for the issue in this case. Later that evening, Dets. Smith and Wade were questioned formally by Lt. Mack, with Sgt. Butler acting as a witness, concerning the incident with the States Attorney. Detective C. Wade and Detective C. Smith were ordered to write 95's in reference to this incident. Summarily, the above referenced Detectives were verbally reprimanded (intimidated) over this incident but Det. A. Lansey (African American), the lead Detective, was not.
4. The above referenced Detectives have, numerous times, brought to the attention of both Sgt. D.C. Moore's and Lt. J. Mack's their uneasiness with the command's instructions to unlawfully pull people from the street to be interviewed. In a related shooting incident (on Garrison Blvd.), the above referenced Detectives were instructed by Sgt. Moore to respond to the 2900 block of Garrison Blvd. and remove prostitutes from the street and bring them into the Northwest District for questioning. Det. Smith advised Sgt. Moore that this was a civil rights violation and should not be done. Sgt. Moore responded that the Detectives were to do an Involuntary Detention. In reference to a shooting investigation (Palmer Ave) these Detectives were having a problem getting one of the witnesses in. Sgt. Moore was advised that the witness had dropped her newborn child off a sitters on W. Belvedere Ave. Sgt. Moore order/told us ( Det. Smith and Robinson) to go to the sitter's house and bring in the sitter and the newborn and the mother would show up. These Detective refused to follow this order. It was discovered that the mother was threatened and was scared. These incidents have been brought to the attention of Lt. Mack and Major Williams attention. The above referenced Detectives have sought the advice of the States Attorney's Office and were advised not to do this, as this practice is a Violation of Civil Rights. And were advised not to do this unless we wanted a lawsuit down the road. This can be verified by speaking with A.S.A. Anthony Gioia of the Five Unit (410-396-7391).
5. Both Detective C. Wade and Detective G. Robinson have recently been having their overtime slips questioned. Example: only the Lieutenant can authorize overtime. We have been a Unit since March and this has never before been an issue. Summarily, Det. Wade's and Det. Robinson's overtime slips are being held in question and the authorized part erased, while other's overtime slips with the same signature are not questioned. This Det. Robinson has a copy of these slips.
6. On the 28 of October 00, an initiative was conducted by Sgt. S. Young where she would flag down hackers (unlicensed taxies), issue a citation (moving), then bring them into the Northwestern District to be debriefed. Det. Robinson went to Sgt. D. Gardner and advised him to check on this procedure as it was believed to be a violation of Civil Rights. This was

witnessed by Det. C. Smith and Det. C. Wade. Sgt. D. Gardner's reply was, "this is not my initiative and I wipe my hands of this." When the first person was brought in, both Det. C. Wade and Det. G. Robinson asked this individual if he was under arrest. This person stated "No, I was told I had to come in and talk to you and was followed to the station by a police car." At this time the Detectives stated he was free to leave and refused to talk to him. Be advised that this person was issued a moving citation. This person's name is documented.

7. Similar situations have been brought to Sgt. Moore and Lt. Mack's attention in the past. Det. B. Douglas (African American, now Sgt. Douglas C.D.) has advised Sgt. Moore this is illegal and was not going to do this, in reference to taking somebody off the street against there will and do an involuntary detention. Nothing else was said or done to Det. Douglas.

8. On 30 Oct. 01, both Det. C. Wade and Det. G. Robinson were questioned by Sgt. D.C. Moore in reference to what occurred on 28 October 00. Both Detectives related what had happened and advised the Sgt. that this was a violation of Civil Rights. The Detectives were told that they will do what we are ordered to do by a Sergeant or be charged. Det. G. Robinson was told by Sgt. D.C. Moore that he hopes that he (G. Robinson) did not think this was a black/white issue with him (Sgt. Moore), Sgt. S. Young or the Lieutenant. This Detective is/was offended by this statement. Sgt. Moore ended this conversation with "Greg, I can't protect you anymore." Det. Robinson did not understand this statement due to the fact that he has never been reprimanded for any violation of conduct in his tenure with this Department. Det. C. Smith was a witness to this incident.

9. On 01 Nov 2000, Det. Robinson was advised that he was being sent to the robbery unit as of the following Monday. Det. Robinson believes this is a punishment due to the incident on 28 Oct. Det. Robinson advised Sgt. Moore that this was felt to be a punishment. Sgt. Moore advised that he told the Lieutenant he would take care of dealing with Greg. Then the Lieutenant said he is still going to robberies. This was witnessed by Det. C. Smith. Also Det. A. Lansey told the unit he was going to Aggravated Assaults. He also stated he spoke with the Lieutenant and this move was made to accommodate him with a chance to return to school.

10. During this discussion, it was brought up again about illegal stops on 28 Oct. 00. Det. Robinson again advised him about how he spoke with the States Attorney's Office and was advised that this cannot be done. Det. Robinson was told that he will follow a direct order or be charged. Det. Robinson feels this to be an illegal act and does not wish to get sued or indicted.

11. The above referenced Detectives were also told that if anybody did not like the moves you can put in a Form 70. Det. Robinson stated he would due to the work conditions and constant threat of being charged as well as the unfair treatment of certain officers.

12. On 15 Nov 00 at approximately 1200 hours, Dets. Robinson, Wade and Smith met with Major A. Williams at the Western District in reference to the above listed problems. Major Williams asked all three of us to give him 30 days (15 Dec.) to investigate the situation and get back to them. We decided to give the Major 30 days. During this meeting, Det. G. Robinson and Det. C. Wade asked the Major for an immediate transfer from the Unit. They stated that they didn't care if they were sent to Patrol but due to the hostile work environment, they could no longer work under these (hostile) conditions. Be advised that Det. C. Smith advised Major A. Williams that he had a transfer in at this time and wanted to leave due to the working conditions. Major A. Williams reply was were all good Detectives and he would not let any of us go and if he could not rectify the situation he would leave this Unit before we would leave. All parties agreed that they would give the Major his 30 days, but did advise the F.O.P of this meeting.

13. Major Williams was told by Det. G. Robinson that all the actions that occurred to these Detectives, were a black/white issue. The Detective made it clear that these actions were being done because we were white. Major Williams documented this statement on a piece of paper. This was witnessed by Det. C. Wade and Det. C. Smith.

14. On 16 Nov 00, during the afternoon hours, Lt. John Mack had a squad meeting with all the Detectives, including the Sergeants. The only person not present was Tom Jefferies. During the meeting, Lt. Mack stated to the unit that "apparently Greg, Chris and Chet are not happy, so they went to the Major to complain." Lt. Mack then said "it does not matter who you go to or what you say, it always gets back to me." We were told that if we did not like it here there are two ways out. (1) get promoted to Sergeant or (2) quit the department. At this time Sergeant S. Young laughingly said "you have to pass the test first." As Det. Robinson was the only person in the squad to take the test, this insulting remark was felt to be directed at him, as was also noted through comments made by several other people in the unit.

15. Also during this meeting, Sergeant S. Young stated that her loyalty was to the Lieutenant and the Sergeants and that if she heard any of us say anything about them she will write an I.I.R. Form (displaying same in her hand) and have us charged. At the end of the meeting, Lt. J. Mack made a public assessment of each member of the units abilities. The above referenced Detectives, as well as Det. B. Hooper and Det. G. Gilmore, were all told that they need to work on some things. All listed are some of the unit's hardest workers. Det. B. Hooper was told in front of the entire unit that he is not detective material and does not have "it". This was inappropriate conduct and very unprofessional behavior of a supervisor.

16. On 12 Dec. 00 Sergeant S. Young was upset all day about an incident that occurred the night before. She had been advised that a Sergeant must work every night to cover the 6P-2A shift. All the time cussing about/to the Lieutenant. At 1445 hours, Sergeant Young started to yell at the Lieutenant at which time the Lieutenant addressed the Sergeant about the 2-hour lunch she had just taken. At this time she was yelling at him to "shut up" and "go back into your office." During the argument she used the words: "fuck you", "asshole" and "shut-up" along with numerous other words. This was done in the presence of other Detectives and Sergeants from the Northwest (Sgts. Moore and Gardner) and from the Western (Sgt. Bannon). At this time Lt. Mack, asked (ordered) all persons including the Sergeants to leave the room except for Sergeant Young. It was offensive to all involved to be made witness to this conduct unbecoming of a Supervisor. Persons present were Sergeant D. Gardner, Sergeant D.C. Moore, Sergeant T. Bannon, Det. R. Barkus, Det. G. Manuel, Det. G. Robinson, and Det. C. Wade. Det. Swannson and Det. G. Gilmore. Same were told to leave the room while the Lieutenant addressed Sergeant Young. Be advised that Major A. Williams saw all Detectives on the parking lot and was told why we were on the lot. The Major replied "I want to see this" and went into the office. It is believed that if the above referenced Detective or certain other persons said these things to a supervisor they would be charged. This is a double standard since Sergeant Young made it clear that if we badmouthed a supervisor she would do an I.I.R. form on us and charge us.

17. During the month of December 2000, Sgt. D. C. Moore advised Det. Robinson that he was returning to the Shooting Squad. This was not Sgt. Moore's first choice, Detective Lansey told Sgt. Moore that he did not want to come to shootings and at this time I (Det. Robinson) was told that I was coming back to the Shooting Unit. Det. Robinson was also advised that he "had two strikes against him". Sgt. D. C. Moore said this was for loyalty. When questioned, Sgt. D. C. Moore said it was in reference to the grievances. Sgt. D. C. Moore advised Det. Robinson that

Det C. Wade was kicked out of this squad due to the grievances and that Det. C. Smith was advised to "get a new home". Det. Smith responded that a transfer to a new squad was in the works however Sgt. Moore replied that he wanted him out immediately. Sgt. Moore also stated that the Major up the street (Major A. Williams) is fed-up with the grievances and that this has to stop. This incident occurred on the date that Det. C. Wade signed his Green Sheet.

18. A conversation between Det. C. Smith, Det. G. Robinson and Sgt. D. C. Moore occurred in reference to loyalty. During this conversation Sgt. D.C. Moore reminded Det. C. Smith that he had until the end of January to "find a new home". Det. Smith again reminded the Sgt. that a transfer was in the works. The Detectives asked Sgt. D. C. Moore why Det. C. Wade was out of the Unit and Sgt. D. C. Moore's reply was due to his loyalty. Sgt. Moore stated that "Chris (Det. Wade) is a good worker but has no loyalty". We asked about the loyalty and Sgt. Moore said it was about the grievances. In conclusion of this conversation Sgt. Moore stated "I never asked for any of you guys".

19. Current unfair labor practices being done by Lieutenant J. Mack:
    - In reference to daily overtime slips, the above referenced Detectives must document all activities on the back of their overtime slips or they will be returned by the Lieutenant. If you check the overtime slips of the black Detectives, there will be minimal information on the front and same are sent through. Example: Investigation on CC # 6A12345. This will be on 5, 8 or 12 hour slips. The above referenced Detectives can not turn in even a one-hour slip without putting all information on the back. These actions have started since November 2000. This constitutes blatant racial harassment/discrimination of the white Detectives in this Unit, and has been brought to the attention to Major A. Williams during a previous meeting without anything being done or any investigation being conducted. Never has the Major spoke with any other Detectives in reference to this situation as he promised to do.
    - These Detectives have filed numerous grievances in reference to our overtime being paid in a timely manner (nest business day). The F.O.P. has also spoken to Major Williams about this issue several times. Nothing has been resolved and overtime is left sitting around and not signed for several days to week(s). Sgt. Moore's response is "you just want your money on a certain pay check." This argument happens every day and/or week. Again this has been told to Sgt. Moore, Lt. Mack and Major Williams by these Detectives with negative results.
    - In December 00, Det. C. Wade had a vacation during the week of Christmas through 01 Jan 01. Det. Wade vacation was cancelled due to he had 3 k-days. A grievance was filed and Major Williams denied Det Wade his grievance. These actions caused Detective Wade to cancel his New Years Eve that was apart of his scheduled vacation.
    - When Lt. Mack was making up the New Years Eve deployment, Det. C. Wade and Det. C. Smith were on H-Days. These days were canceled by order of the Police Commissioner. When Lt. Mack made up the schedule, the 2 African American Detectives in the shooting unit who were scheduled to work 6p – 2a, were moved to day work and Det. Wade and Smith were put on night work. When Lt. Mack was asked about this, his reply was "I could have given day work to them but when people file grievances I don't have to accommodate anyone."
    - On 14 Feb 01, Det. C. Smith filled out a leave slip requesting off March 17, 2001 to attend a parochial school fund raising event. This Detective personally handed the slip to Sgt.

Moore and explained the reason he needed off, Sgt. Moore's reply was "put it on my desk, that's more than a month away." At the beginning of March 2001 Det. Smith noticed the leave slip on his desk with Sgt. Moore's signature denying the day off. When questioned, Sgt. Moore responded that Det. Smith couldn't have the day off because there would only be one shooting Detective working for that evening. Det. Smith advised that there were 2 other detectives as well as a Sergeant working that night which would leave 3 detectives and a sergeant. Sgt. Moore stated that he wanted 2 shooting detectives at all times. Det. Smith advised Sgt. Moore of Lt. Mack's policy requiring any 3 detectives at one time. Det. Moore stated "I demand 2 shooting detectives and that's the way it's going to be." On 17 Mar 01, Det. Smith arrived at work to notice that Det. Barkus who had been scheduled to work 4-12 shift had been allowed to move his shift to day work.

- On 16 Mar 01, Detective G. Robinson noticed in the roll book that two of the Detectives (both African Americans) were detailed to the funeral of the slain Officer for 17 Mar 01. Det. Robinson was upset at this because he has always attended Police Officer Funerals. Det. Robinson was not asked if he was attending the funeral. When Sgt. Young came into the district, she asked Detective T. Chesley (African American) if he was going to the funeral. He replied that he was not. Sgt. Young did not ask if either Dets. Robinson or Smith were going as both were present when she asked Detective Chesley. When Det. Robinson replied that he was going, Sgt. Young replied "you can't go," but then said "well if you go, you have to go on your own time". Only the Detectives that are on H-Days or working day shift are either being detailed or H-Days moved. Since being in this unit, Det. Robinson has never been detailed or shifts adjusted or H-Day moved for any Police Funeral. As Det. Robinson only works night shift it was an unfair act. Be advised including the Sergeant, there was a total of five people working on this night shift. If Det. Robinson had been detailed to the funeral, there still would have been four persons. Lt. Mack has stated that at least three persons must work night work.

- On 21 Mar 01, Sgt. Moore transferred Detective C. Smith from the Shooting Unit. This was the last white Detective that Sgt. Moore had in the Unit. Det. Robinson was present when Sgt. Moore told Detective Smith that he was being replaced because he (Sgt. Moore) needs a more aggressive Detective. Det. Smith is a by the book Detective and gives much of his time to his cases. Det. Smith was also told by Sgt. Moore that he was gone ("this was the last straw") because he did not come in on his H-Day. Sgt. Moore said that Det. Smith had been given information regarding his shooting and should have come in. Be advised that with the information in question, Det. Smith did a follow-up on 19 Mar 01 (p.m.) and obtained no new information. Both Dets. Smith and Robinson had worked from 1800 hours on 16 Mar 01 to 0200 hours 18 Mar 01, for a total of 32 hours straight. They then returned to work at 1800 hours 18 Mar 01 until 0200 hours on 19 Mar 01. They came back in on 19 Mar 01 at 0900 hours until 0200 20 Mar 01. These Detectives work a total of 57 out of 80 hours on this case. These Detectives were on H-Days on 20 Mar 01 and were exhausted. Sgt. Moore told Det. Smith that not coming in on his H-Day was the last straw. He (Sgt. Moore) has open shootings and he does not like looking bad in front of the Command Staff. Also he stated that he sent two of his Detectives out and obtained information from the victim, that he was responding to the NWD on 21 Mar to tell who shot him. Det. Robinson was present when the victim came to the station. Be advised that the victim did not report who shot him. He also stated as before he did not know who shot

him. These Detectives believe that Sgt. Moore was looking for any reason to get rid of Detective Smith as it had also been recently noted that Det. Smith's pending transfer would not take place in the near future. Because of this incident Det. Robinson believes that his Days are again numbered.

20. During the month of December 00, there were rumors that Lt. Mack broke into I.I.D. and was going to be indicted for a Staples (store) incident. Sgt. Moore's name also came up as one who would be indicted. Due to these rumors, these Detectives were accused as the people spreading these rumors. These can also be confirmed when Detectives Smith and Robinson were on a shooting scene (Clover Ave) and Unit 41 arrived (Major J. Oden) got out of the car and said "I did not get indicted and I'm not getting indicted". This was said in front of Lt. J. Dotson. Then when Major Oden was leaving, he told these Detectives "to tell Jefferies to stop spreading rumors about Lt. Mack.

In closing, the above referenced Detectives have loyally given between 6 and 18 years of service to this Department and to the best of our knowledge, no one has been reprimanded or punished in any way since this unit has been established.

Most, if not all, of these issues have been brought to the attention to Major A. Williams in person and at no time has there been any improvement. The standard statement from Sgt. Moore is "you can tell the Major, make a grievance or go to E.E.O.C. . It doesn't matter, I've got 20 years on and they can't do anything to me!" This statement by Sgt. Moore comes across as if he can do whatever he wants.

Also, in reference to Sgt. D. C. Moore's squad, all of the white Detectives have been transferred, detailed (as punishment) or asked to leave the squad. This started with Detective T. Jefferies. Detective Jefferies is/was our most experienced detective in shootings (coming from homicide). Detective Jefferies is also certified as an instructor in voice stress analyst. Next, once we were going to specialized units, Detective Robinson was advised that he was going to robberies and Detective M. Wallace (African American) was going to shootings under Sgt. Moore. Detective Wallace stated that she did not want to do shootings and was returned to robberies. Detective Robinson returned to shootings. Only once has a black Detective (G. Gilmore) been transferred, this was due to personality conflict with Sgt. Moore and in fact Det. Gilmore was brought back into the squad to replace Detective C. Smith when he was transferred out. Reminder, all these moves have to go through Lt. Mack before the moves are final. So he (Lt. Mack) is aware of all conduct in this Unit.

Detective G. Robinson has been brought back into the squad (a 2nd time) solely because of Det. A. Lansey's (African American) numerous refusals to Sgt. Moore about his returning to the squad. Upon Det. Robinson's return to the squad, he was told that if he committed any infraction (loyalty/filing grievances) he would immediately be bounced from the squad. Sgt. D. Gardner made a statement that one of his Detectives was not pulling his weight and asked the Lieutenant to transfer him, he was told he had to keep him. In comparison, every time Sgt. Moore wanted to get rid of someone, it was done the next day. Also the above referenced Detectives are fed up with Sgt. Moore's statement of "if you have a problem we can go to the garage and fight, I'd rather handle it this way." This is a good example of a supervisor intimidating a Detective that is only 5'06" tall. If the Department would charge an Officer for threatening a citizen, they should frown upon this Supervisors tactics.

These Detectives have brought these complaints to the following persons verbally and in writing:

Sgt. D. C. Moore
Lt. John Mack
Major Antonio Williams
Numerous States Attorneys in the F.I.V.E. Unit
A.S.A. Liz Ritter
I.I.D. (Lt. Able)
The F.O.P. who are actively working with these Detectives
Still all these actions continue.

Respectfully,

Detective Chester Smith D551
Northwestern District Robbery Unit
C.I.D./D.I.S.

Detective Chris Wade E025
Northwestern District Robbery Unit
C.I.D./D.I.S.

Detective Gregory Robinson F488
Northwestern District Shooting Unit
C.I.D./D.I.S.