RECEIVED
U.S. DIST. OFFICE
EEOC

2001 SEP 10 A 10: 07

| ES | WMD | UP | GC | NTJ |
|----|-----|----|----|-----|





# U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Baltimore District Office



10 S Howard Street, 3rd Floor
Baltimore, MD 21201
PH. (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270

## General

You have alleged that you were illegally discriminated against by your employer. We need the following information from you. Please note that whatever basis you are alleging in your charge, show that same basis for other individuals and your witnesses. For example, if you allege that you were discriminated against because of your sex, identify the sex of other individuals and witnesses. If you allege that you were discriminated against because of your age and race, identify the age and race of other individuals and witnesses. **If you need more space to answer any of these questions, you may attach additional sheets.**

**(Please think carefully before answering each question because you are asked at the end of the questionnaire to declare under penalty of perjury that your answers are correct. A false statement on any part of this questionnaire may be grounds for the Commission to dismiss your charge.)**

*This form is affected by the Privacy Act of 1974; see Privacy Act statement on the last page before completing this form.

Your name: **Dawn M. Chevront**    Date: **9·10·01**
Address: **1199 Marchee Rd**    City: **Finksburg**
County: **Carroll**    State: **MD**    Zip Code: **21048**
Home phone: **(410) 876·5078**    Work phone: **(410) 396·2466**
Social Security No: **213·70·1329**

PAGER **410·389·8537**

Name of employer or organization that discriminated against you:
Name: **Balto. City Police Dept.**
Address: **601 E. Fayette St.**    City: **Balto.**
State: **MD**    ZipCode: **21202**    Phone (with area code): _____

Name of the head of the organization: **Edward Norris**
Title of the head of the organization: **Police Commissioner**

Your date of birth: 08.03.65  Age: 36  Sex: F  Race: W
National origin: American Citizen  Religion: CATHOLIC
What type of business does the employer engage in? public safety
Number of employees:  ( ) 1 to 14       ( ) 15 to 100
       ( ) 101 to 200    ( ) 201 to 500    (✓) More than 500

**Provide the name of an individual at a different address who we can contact if we are unable to reach you:**

Name:_____ Relationship:_____
Phone:_____
Address:_____

1. How have you been harmed?
   ( ) Not hired          ( ) Discharge          ( ) Demotion
   ( ) Promotion          ( ) Layoff             ( ) Other terms of
   (✓) Transfer           ( ) Retirement             employment (specify)
   ( ) Leave              ( ) Benefits           _____
   ( ) Pay                (✓) Harassment         ( ) Accommodation
   ( ) Discipline         ( ) Sexual harassment      of a disability

2. Date of Harm: See ATTACHED

3. What was the thing about you that motivated the employer or union to take whatever action it took against you?
   (✓) Race              (✓) Pregnancy          ( ) National Origin
   (✓) Color             ( ) Religion           ( ) Age
   ( ) Sex                                      ( ) Disability
   ( ) Retaliation for having complained about discrimination.

4. If you believe you were discriminated against because of a disability, indicate:

   Brief description of disability: _____
   How long the disability will last: _____
   How the disability limits you in important daily activities (such as breathing, concentrating, sleeping, seeing, walking, lifting, and so on) _____
   _____
   _____
   _____

5. Explain the facts that lead you to believe that your employer or union discriminated against you: _see ATTACHED_

6. Were you ever at any time asked to sign an agreement that required that all disputes between you and your employer be resolved solely through binding arbitration? Yes ( ) No (✓)   If yes, attach a copy of the agreement. If you do not have a copy, where can we obtain one? Briefly describe the terms of the agreement as you understand them, and indicate when it was presented to you.

_____(Attach copies of any documents which you believe would support your discrimination claim.)

***ATTACH ADDITIONAL SHEETS AS NECESSARY***

(Complete as many of the following questions as apply)
Job title: _Detective_   Date hired: _10.6.93_
Salary: _$48,900_
Name of immediate supervisor: _Det. Sgt. Sonia Young_
Supervisor's Title: _Detective Sergeant_
Unit, department or division: _CID - DIS - NWD - DVU_
Number of employees in department or division: _3,000_
Number of employees with the same job title: _unk_

Provide the following information for any witnesses who will provide evidence to support your allegations:
Name: _Det. Christine Coleman_        Name: _LT. James Rood_
Home phone: (410) _235-2554_          Home phone: (   ) _____
Work phone: (410) _396-2466_          Work phone: (410) _396-2466_
Address: _5271 Reisterstown Rd_       Address: _5271 Reisterstown Rd_

_Det. Garcia Gilmore_
_410 396 2466_
_5271 Reisterstown Rd_

RECEIVED
DIST. OFFICE
EEOC

2001 SEP 10 A 10: 07

Nature of the evidence they will provide: _discrimination_          Nature of the evidence they will provide: _discrimination_

**Have you sought assistance from any other government agency, union, attorney or other source?** (✓) yes ( ) no
Name of source of assistance: _FOP, EEOC (local), Command Staff, Michael Marshal_
Results, if any: _none, as of this date_

**Have you filed an EEOC charge in the past?**   No ✓   Yes ~~✗~~ done
If yes, provide:   Date filed _____   Charge number _____
Organization charged _____

I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: _10 Sep 01_    Signature: _[signature]_

**PRIVACY ACT STATEMENT**
(This form is covered by the Privacy Act of 1974, Public Law 930579. Authority for requesting the personal data and the uses thereof are given below.)

FORM NUMBER/TITLE/DATE:EEOC FORM 233, INTAKE QUESTIONNAIRE, AUGUST 1987

AUTHORITY:42 U.S.C. 2000e-5(b), 29 U.S.C. Section 626.

PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to avoid the intake of matters not within its jurisdiction.

ROUTINE PURPOSES: Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over potential charges, complaints or allegations of employment discrimination and to provide such pre-charge filing counseling as is appropriate. Information provided on this form may be disclosed to other state, local and federal agencies as may be appropriate or necessary to carry out the Commission's functions. This would include employment practices laws. Information may also be disclosed to Charging Parties in consideration of or connection with litigation.

WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

## AFFIDAVIT OF DETECTIVE DAWN M. CHEUVRONT

Dawn M. Cheuvront, having been duly sworn states, as follows:

1. I am a resident of the State of Maryland and competent to testify to the matters set forth herein based on personal knowledge.

2. I am a detective with the Baltimore City Police Department.

3. I hereby swear under penalty of perjury that the contents of the attached memo are true and correct.

I, Dawn M. Cheuvront, on this __10TH__ day of September, 2001, declare, under the penalties of perjury, that the contents of the foregoing Affidavit are true and correct.

_____
Dawn M. Cheuvront
Detective, Baltimore City Police Department


SUBSCRIBED AND SWORN before me on this __10th__ day of __Sept.__, 2001.

_____
Notary Public

My Commission Expires: __6/1/04__

# DET. DAWN M. CHEUVRONT

DET. DAWN M. CHEUVRONT

October 4, 2000
Lt. John Mack made the remark that he was trying to get two females into the NWD-CID Unit; however he was unsure where to place them i.e., Robbery, Burglary, or Shooting because "two females can't work together". This Detective took offense to this statement because in my unit it was myself and another female. Also, on this day, this same Lt. stated that he "Just wanted to see the two of you fight" to myself and Det. T. Jefferies. This was due to a report that Det. Jefferies had that this Detective needed and did not receive, and the Lt. attempted to start an argument between us. All of this was witnessed by Detectives C. Smith and T. Jefferies.

October 18, 2000
This Detective called in and requested a vacation day because I was not feeling well.

October 19, 2000
This Detective was advised by Sgt. Sonia Young that she would let October 18th slide; however, from now on if I wasn't feeling well I HAD to use a Medical day. This was stated in front of Det. C. Coleman.

November 6, 2000

This Detective had a conversation with the Administrative LT. On the District side regarding my pregnancy. During this conversation, Lt. Mack walked by and saw us talking. After this conversation, I went back to my desk where I was approached by Sgt. S. Young who stated that she needed to see me. We then proceeded into the interview room where she brought in Sgt. D.C. Moore (to be her witness, she said). Sgt. Young then went on to state that she and the Lt. were tired of me talking about them around the district and that if I continued, she would have to charge me with slander. When I tried to ascertain what she was talking about, she evaded the question and went on to state that there were just as many black officers as white officers in our office. Also, that she's been in the department longer than I and she's got friends and I should watch who I talk to. During all of this Det. A. Barkas came to the door and stated, you might want to hold it down, everyone can hear you. Sgt. Young also asked if I was trying to leave the unit, to which I replied "yes" and I advised her why. Once I was back at my desk, Sgt. Young responded and handed me a Form 70 (Request for Transfer) advised me to fill it out and she would make sure it was signed and given to the Major. After a few minutes, she came back and retrieved the completed Form 70.

November 16, 2000
This Detective left a Dr.'s note for Sgt. Young (see attached). Upon reading it she immediately came around to my desk and asked "What's this about?" I tried to explain that there were some complications and that my doctor wanted me to maintain as much normalcy as possible with this pregnancy. I advised that my doctor wanted me to stay on

a day shift, of which I had been on for several months prior to becoming pregnant. Sgt. Young's response was, well you can work a permanent 12x8 shift because I need Tina (Det. Coleman) on a day shift to do home visits. Sgt. Young then called my personal OB/GYN and left a message. She then called Mercy hospital and advised me that we were going to see the city doctor to let them determine my status.. Once at Mercy I saw Dr. Lyons who asked me some questions, then stated that there was no reason I couldn't work shift work. Dr. Lyons also made the statement that I was past the crucial part in my pregnancy and that since I had some problems with my last pregnancy and that worked out fine, I should be O.K. with this pregnancy. Dr. Lyons filled out my paperwork (see attached) which stated that I was to have "No prisoner contact or prisoner apprehension". When Sgt. Young saw this she stated to Dr. Lyons "Well she doesn't need to be there" "We always have prisoners in the office".

Several weeks later, I found out that the other Detective in my unit was allowed to work all day work with weekends off. Furthermore, approximately March 2001, another Detective was put into this unit and he works all day work with weekends off.

Later on this same day, there was a mandatory staff meeting. Lt. Mack assessed every Detective in the unit except this writer. It was a very unprofessional meeting where detectives were belittled, and profane language was used. We were all told again, that if we did not wish to be in this unit, to let them (Supervisors) know and we would be out.

November 17, 2000
This Detective due to the events listed above and the events of the day before was unable to sleep and was vomiting in the morning. I called in for a Medical day, then called my OB/GYN and advised what was going on. My doctor felt it best to put me on Celexa, an anti-depressant (see attached which states that depression can be brought on by stress),

November 20 & 21, 2000
This Detective called in Medical because the medication was making me sick.

November 21, 2000
Sgt. Young and Det. C. Coleman came to my home to suspend my police powers due to the medication. This Det. spoke with Major Antonio Williams and advised him of the on going problems in this unit.

November 22, 2000
This Detective again spoke with Major Antonio Williams, at this time he advised me that he was aware of my Form 70 and that he did not want all of his detectives to leave, and that he was going to find out what the problem(s) are and do what he could to fix them. He further stated that if he found out that there were ulterior motives behind my police powers being suspended, he would take action. He also told this writer that he knew there were problems at the NWD and that he was send a letter to each Detective at their home requesting a one-on-one meeting to ascertain the problems. To this day, no one has received a letter.

November 29, 2000
      This Detective had a doctor's appointment. I advised my OB/GYN that I stopped taking the medicine because it made me sick. My doctor was concerned however, that I still was not eating or sleeping like I should and that I was having a difficult time holding anything down. At this point my doctor put me out of work indefinitely.

December 7, 2000
      This Detective was contacted at home by Sgt. D. Gardner who stated that he just came back from vacation and was advised that I now worked for him in the Robbery Unit.

      It should be noted that whenever Sgt. Young addressed the Domestic Violence Unit (where I worked), she would only address/make eye contact with Det. Coleman even if whatever she was stating pertained to just me or both of us.

      Prior to Sgt. Young taking over the Domestic Violence Unit and the Burglary squad, the Sgt. at the time, Sgt. J. Rood was not allowed to make a decision regarding any of the Detectives that worked for him. All decision were made by the Lt.; however, when Sgt. Young came on and took over, it was as if she ran the entire unit.

      There were occasions where the supervisors would meet in the office (of which was only separated ¾ of the way between my desk and the office area they met in) where Sgt. Young could be overheard using profanity towards another supervisor over days off or hours worked. The Lt. Would also be present; however, rarely said anything.

      Sometime in the month of February, 2001, this writer was advised by Detectives C. Coleman and C. Wade that Sgt. Young was charging me; however, that was all that they knew.

      I feel that my working in this HOSTILE work environment would have, had I continued working there created problems for my unborn child.

July 5, 2001

    Det. Swanson called (I took the call) and asked for P7/4 because she was not feeling well. I left the note for Sgt. Young. To my knowledge nothing was ever said, advising Det. Swanson that she would have to use Medical.

July 10, 2001

    Sgt. Young was on the telephone talking about Art Scape and McDonald's overtime and one of the days she wasn't able to work. She was arguing in a playful manner with whoever was on the other line. They obviously said they couldn't or wouldn't do it and her reply was "I'd rather give it to a number 2" (meaning a white person).

July 24, 2001

    Sgt. Young told me she needed to talk to me and proceeded to walk outside. Once outside, she advised that she need information for stats. When I advised her that she told me not to give her the information unless it was complete, she ignored me and went on to say that she heard that I wasn't going to help her, to which I replied "haven't I given you everything you've asked for?" She then went on to say that she knows I had a problem with Lt. Mack and that she's heard me talk about him. She further stated that she knew that I was "moody" due to my pregnancy. She also advised that when I need a day off, I'm to call her at home and request same.