### POLICE DEPARTMENT
### BALTIMORE, MARYLAND

May 14, 2001

To:        Chief, Criminal Investigation Division

From:      Commanding Officer, DIS Area II

Subject:   Northwestern District DIS Grievances

Sir, per our previous conversations, here is my response and suggested actions in reference to the grievance situation in the Northwestern District DIS.

## Introduction

I received a grievance on February 5, 2001 from Detective Chris Wade. As I understood the grievance, Detective Wade was complaining that Sergeant Darryl Moore told him if he did not like the way he was running the shooting squad he (Detective Wade) could "get the fuck out." Furthermore, the grievance stated that Sergeant Moore said that nothing could be done to him because he has twenty years on the job and can retire. Lastly, as I understood the grievance, Detective Wade wrote in his grievance that Sergeant Moore told him that I (Major Williams) was tired of him running to me every time he had a problem.

I responded to the grievance by writing that the use of profanity in the work place must cease. I directed Sergeant Moore on February 9, 2001 to stop using profanity and treat everyone fairly. I also indicated that as the commanding officer I am available to discuss problems.

You subsequently met with me and advised me that the Fraternal Order of Police representative wanted to present a step three grievance in regards to this matter because Detective Wade was not satisfied with my actions. Frankly, I did not want you as the Chief of the Criminal Investigation Division to have to resolve a matter that should have been handled at my level. I asked permission to re-investigate this matter.

## Subsequent Actions

I met with Detective Wade on April 3, 2001 at approximately 8:20 PM to discuss his grievance and the reason(s) he was dissatisfied with my response to his grievance. Detective Wade indicated that he was dissatisfied with my response to his grievance

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

because I did not address his complaint of feeling he was wrongly moved out of the shooting squad. I advised Detective Wade that I did not recall his grievance mentioning that he was complaining of being moved out of the shooting squad, but since he mentioned it I would re-investigate his grievance because it is possible that I might have missed this aspect of his grievance.

During this meeting, I asked Detective Wade to discuss his concerns with me so I could ensure that I address his concerns. Detective Wade informed me of the following:

- Sergeant Moore has said on numerous occasions, "If you don't like the way things are done get the fuck out. File an EEOC complaint, file a grievance or whatever you have to do because there isn't a fucking thing they can do to me because I got twenty years on the job."
- Sergeant Moore harasses him by telling him every day to "get the fuck out. I don't care who you talk to I got friends at the top. It will get back to me before you get back to the district.
- Sergeant Moore has asked him to take actions during investigations that are at the least questionable, if not outright wrong.

I asked Detective Wade if Sergeant Moore made any of these alleged comments after the meeting I had with the Northwestern District DIS on February 9, 2001. Detective Wade responded by saying that he does not think Sergeant Moore has made any of these types of comments since I had my meeting with the entire unit. Because Detective Wade sounded as if he was unsure whether or not Sergeant Moore made any derogatory comments after I met with the unit, I asked Detective Wade how strongly he felt about whether these comments had been made since my meeting with the unit. Detective Wade indicated that he does not really remember if the comments have been made since my meeting. I asked Detective Wade when was the last time he heard any of the alleged comments from Sergeant Moore. He said he could not remember. I asked Detective Wade how was his current interactions or contact with Sergeant Moore. Detective Wade said that Sergeant Moore has been working a lot of day work and he has not seen Sergeant Moore.

I asked Detective Wade to provide me a written report of the things he felt that Sergeant Moore asked him to do that was wrong or questionable. He agreed to write a report for me. He said he could have the report for me on April 4, 2001. I asked him what time did he anticipate having the report completed? I instructed Detective Wade to put his report in a plain white envelope marked Major Williams and confidential. I also instructed Detective Wade to put the white envelope inside a departmental mailing envelope and hand deliver it to the Western District.

2

### POLICE DEPARTMENT
### BALTIMORE, MARYLAND

I asked Detective Wade what was Sergeant Moore doing that in his mind constituted harassment? Detective Wade said the harassment was Sergeant Moore telling him every day to "get the fuck out…"

I asked Detective Wade to tell me what he felt had to be done to rectify this situation. He informed me that he wanted to go back to the shooting squad because he felt he was wrongfully moved out of the shooting squad. He said loyalty begets loyalty and that he was taken out for no reason.

Detective Wade told me that he was told he could not work overtime since he was in the robbery squad. In addition to saying he was told that overtime would not be allowed for robbery investigations, Detective Wade said that during his first or second week in the robbery squad Sergeant Gardner informed him that Lieutenant Mack said that "he won't pay overtime to Detective Wade." I asked Detective Wade was there any occasions when he followed proper procedures for daily overtime and did not get paid. Detective Wade said there was one occasion when he did not get paid for working overtime, but he was not sure whose fault it was that he did not get paid. He said he came in to work to investigate an ATM robbery, but he acknowledged that he did not call and obtain the required permission before coming in to work overtime.

At this point I advised Detective Wade that I am concerned about the allegations that he made. I acknowledged that I might have missed his complaint of being wrongfully moved out of the shooting squad. I advised him that I would re-investigate his grievance. This concluded our meeting.

## Investigative Plan

As a result of my meeting with Detective Wade, I decided that the following course of action had to be taken to gather more information and make an appropriate recommendation:

- Contact the Fraternal Order of Police and obtain a full copy of Detective Wade's grievance. Review it to see if the issue of his movement was actually mentioned in the grievance.
- Review Detective Wade's report once it is received.
- Speak with other detectives assigned to Sergeant Moore and determine if any of them heard the comments alleged by Detective Wade.
- Have Sergeant Moore submit documentation to explain why he moved Detective Wade from the shooting squad.
- Speak with Sergeant Gardner to verify whether he told Detective Wade that Lieutenant Mack said overtime would not be paid to Detective Wade.
- Review the daily overtime submissions for the unit.

# POLICE DEPARTMENT
# BALTIMORE, MARYLAND

- Review Detective Wade's performance evaluation for the period ending December 31, 2000.
- Prepare a report for the Chief, Criminal Investigation Division stating my actions and recommendation.

## Investigation

The Fraternal Order of Police was contacted and a full copy of Detective Wade's grievance was requested. Although a copy of the grievance was delivered to the Western District station on Friday April 13, 2001, I did not receive it until April 23, 2001 because I was on leave. I was on Bereavement Leave from April 11-14. I was on my regular days off on April 15, 16, 2001. I requested an additional week off from the Chief, Criminal Investigation Division in order to take care of my grandfather's estate. My request was graciously approved. I reported back to work on Monday April 23, 2001.

After reviewing Detective Wade's grievance I identified the following issues:

- Detective Wade wrote in his grievance that his evaluation said he was not loyal.
- The grievance said that Sergeant Moore told him that I was tired of him running down to me every time he had a problem.
- The grievance said Detective Wade was given a choice to "go somewhere else or go to the Robbery squad." He elected to go to the Robbery squad.
- The grievance mentioned that he filed grievances in the past about his overtime being scrutinized and not being submitted in a timely manner.
- The grievance stated on January 9, 2001 he heard Sergeant Moore tell other detectives he was moved out of the shooting squad because of loyalty problems. Detective Wade believes this is discrimination under Title 7.
- Sergeant Moore has repeatedly stated, "he doesn't give a fuck what people think of what he does because he has twenty years on and can retire and they can't do anything to him."

In terms of a remedy sought, the grievance form, line four, states. "I cannot work for this man if I was able to come back. He needs to be replaced. His constant harassment makes a hostile work area.

4

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

**Review of Detective Wade's Grievance**

The first issue that I needed to clarify was whether or not Detective Wade actually complained about being removed from the shooting squad and whether or not he asked to go back to the shooting squad. Detective Wade did not make it clear in his grievance that he wanted to go back to the shooting squad. He said, in so many words that he could not work for Sergeant Moore if he could come back to the shooting squad and that Sergeant Moore needs to be replaced. Detective Wade clarified what he meant during our meeting on April 3, 2001. I also explained to Detective Wade that I did not tell Sergeant Moore or anyone else that I did not want them to discuss their concerns with me. I told him that I am available to deal with his problems.

**Review of Detective Wade's Evaluation**
**For Period from July 1, 2000 to December 31, 2000**

The second course of action I took was to review Detective Wade's evaluation for the period from July 1, 2000 through December 31, 2000. Detective Wade's evaluation was marked "Be glad to have in box 14. Sergeant Moore indicated in box 15 that his estimate of Detective Wade's duties was "excellent." Briefly, the narrative section of the evaluation indicated that Detective Wade performed his duties in an excellent manner. Detective Wade wrote in his grievance that Sergeant Moore said he was not loyal in his evaluation. The narrative of the evaluation say's that "Detective Wade's loyalty to this supervision has become questionable during this period and this fact has been discussed at length with Detective Wade.

**Sergeant Moore's Explanation of why**
**He Moved Detective Wade**

The third course of action I took was to meet with Sergeant Moore and request him to submit a written report explaining why he moved Detective Chris Wade from the shooting team. This was done to obtain documentation as well as explain what Sergeant Moore meant when he allegedly stated that Detective Wade had loyalty problems. Sergeant Moore submitted a report on April 11, 2001. Again I was out on bereavement leave and did not see the report until Monday April 23, 2001. Sergeant Moore provided the following explanation about why he moved Detective Chris Wade from the shooting squad:

- According to Detective Moore's report, some of the shooting detectives were showing signs of fatigue and distress. Additionally their attitudes were changing.
- Certain detectives were generating a lot of overtime, but they were not clearing cases.

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

- Detective Wade was transferred out of the shooting squad on January 2, 2001 because " of loyalty problems and productivity." Detective Wade had eight cases assigned to him in the year 2000. Only three of the eight were cleared.
- Detective Wade along with Detective Smith had the lowest clearance rate of all the current and past shooting detectives. Sergeant Moore would say he explained the reasons for the move to Detective Wade, but the move was not punishment.

I checked Lotus Notes and determined that Detective Chris Wade had the following shooting cases assigned to him for investigation:

| Case # | CC # | Date | # Victims | Status |
|--------|------|------|-----------|--------|
| 2000V0664 | 006L06810 | 12/11/00 | One Victim | Open |
| 2000V0645 | 006K17698 | 11/26/00 | One Victim | Open |
| 2000V0616 | 006K06997 | 11/10/00 | One Victim | Open |
| 2000V0549 | 006J00482 | 10/1/00 | One Victim | Open |
| 2000V0438 | 006H03670 | 8/5/00 | One Victim | Closed/ one arrest |
| 2000V0314 | 006F03474 | 6/6/00 | One Victim | Open |
| 2000V0298 | 006E20171 | 5/28/00 | Three Victims | Closed/ two arrests |
| 2000V0186 | 006C21277 | 3/29/00 | One Victim | Closed/ one arrest |

Total 10 victims – 4 arrests

Detective Wade has a clearance rate of 40%.

## Detective Wade's Report

Detective Wade submitted a report at my request to detail the things that Sergeant Moore asked him to do that were questionable. Detective Wade mentioned six things. Only five pertain to Sergeant Moore. The sixth item was raised about Lieutenant John Mack. Detective Wade listed the following issues:

- Detectives were told to randomly take people off the street from the areas shootings occurred and debrief them. According to Detective Wade, they were not involuntarily detained.
- The detectives were instructed to remove a shooting victim/witness from a rehabilitation center to interview her.
- On one occasion the detectives were told to remove a baby sitter and infant from a home at 2:00 AM to get the mother of the baby to come into the NWD station to be interviewed about a shooting.

6

**POLICE DEPARTMENT**
**BALTIMORE, MARYLAND**

- During a hacking initiative, detectives were told to interview a man who was brought into the NWD station after the man was only given a moving citation. Detective Wade felt because the man was not placed under the arrest they should not interview him. He subsequently released him.
- According to Detective Wade, he was told to interview an uncooperative shooting victim who said he would not tell them who shot him. This was done against the wishes of the Assistant State's Attorney.

Detective Wade did not bring the envelope to the Western District until April 10, 2001. It should be mentioned that I left work early on April 10, 2001 because I was notified that my Grandfather died and I was needed to take care of his arrangements and other affairs. My secretary, Ms. Kia Smith, informed me later in the day on April 10, 2001 that Detective Wade left an envelope for me.

**Interview of Sergeant Douglas Gardner**

I spoke to Sergeant Douglas Gardner, supervisor of the robbery squad on April 30, 2001. I asked Sergeant Gardner if he told Detective Wade that Lieutenant Mack said that he would not pay overtime to Detective Wade? Sergeant Gardner said that he is positive Lieutenant Mack never said anything about not paying Detective Wade overtime. Furthermore, Sergeant Gardner said that Lieutenant Mack never said that the robbery detectives could not work overtime. Sergeant Gardner said that there was only one time that Detective Wade did not get paid overtime and that was for a time he came in to work overtime without getting the required authorization before he came to work.

**Review of Daily Overtime**

I conducted a review of the overtime that was submitted by Detective Wade between January 1, 2001 and March 31, 2001. There were five overtime slips posted on the payroll during this period for Detective Wade. The overtime slips were submitted as follows:

| Date Worked | # of Hours | Payroll Period Overtime was Posted |
|---|---|---|
| 1/22/01 | 6 | 1/25/01 – 2/7/01 |
| 1/24/01 | 7.7 | 2/8/01 – 2/21/01 (Payroll letter sent 2/16/01) |
| 1/24/01 | 4.9 | 2/8/01 – 2/21/01 (Payroll letter sent 2-/16/01)* |
| 1/25/01 | 5.0 | 1/25/01 – 2/7/01 |
| 2/9/01 | .7 | 2/22/01 – 3/7/01 |

Total 24.3 hours

7

**POLICE DEPARTMENT**
**BALTIMORE, MARYLAND**

Other than the overtime slips for January 24, 2001, it appears that
was submitted in a reasonable amount of time. This is true when you con
cut off date for posting overtime is the Monday before the Wednesday the
period ends. It should be mentioned that Detective Wade never worked a.
overtime that he did not get paid for. By Detective Wade's own admission
work overtime on one occasion without asking for the required authorizat
Consequently, he was not paid for the overtime.

**Interview of NWD DIS Detectives**

Detective Wade said that other detectives heard Sergeant Moore u
while speaking to members of the shooting squad. Specifically, Detectiv
Detectives Garcia Gilmore, Anthony Lansey, Daniel Nicholson, Troy Ch
Smith and Gregory Robinson heard Sergeant Moore make comments alo
you don't like the way things are done, get the fuck out."

Detectives Gregory Robinson and Chester Smith agree with Dete
Sergeant Moore has used profanity while talking to the shooting squad ar
previously mentioned comments.

**Detective Anthony Lansey**

Detective Anthony Lansey indicated that he does not ever recall S
using the word "fuck" while addressing the shooting squad. Detective L
acknowledged that all the detectives have used profanity in the past in ge
conversation; however, he said that although Sergeant Moore may use th
Sergeant Moore does not regularly use profanity in his conversation. Wh
Sergeant Moore speaking to the shooting squad about loyalty, Detective
Sergeant Moore feels that some of the detectives are talking about him b
and undermining him.

Sergeant Moore has told the detectives if they are not loyal to hir
look for somewhere else to work. Detective Lansey did not interpret thi
Sergeant Moore wanted the detectives to do anything wrong or against
Detective Lansey said he thought that Sergeant Moore was emphasizing
of the detectives working together.

**Detective Troy Chesley**

Detective Chesley indicated that Sergeant Moore used profanity
the shooting squad on one occasion before I met with the NWD DIS. D
said he does not recall Sergeant Moore ever saying he doesn't give a fuc
think about him because he has twenty years on the job. Since I met wi

8

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

Sergeant Moore has not used any profanity. Detective Chesley is referring to the meeting I had with the NWD DIS on February 9, 2001. Detective Chesley also mentioned that they have a procedure that requires them to obtain authorization from their lieutenant before they work overtime. Detective Chesley was under the impression that Detectives Wade, Robinson, and Smith worked a lot of overtime by meeting with various Assistant State's Attorneys without letting their sergeant or lieutenant know what is going on.

Detective Chesley indicated that he thought Sergeant Moore was harder on Detective Garcia Gilmore than any other detective in the unit. Detective Gilmore was outspoken and Sergeant Moore would put him in his place. In terms of loyalty, Detective Chesley said that Sergeant Moore solicited them to be loyal to him, meaning that they stick together. Detective Chesley also said that he never thought Sergeant Moore meant that they had to perform questionable practices out of a since of loyalty toward Sergeant Moore.

**Detective Daniel Nicholson**

Detective Nicholson indicated that Sergeant Moore had a meeting on one occasion with the shooting squad where the detectives complained of having to work weekends, holidays, and late shifts. Sergeant Moore told the detectives if the job was an inconvenience they should put in a transfer. Sergeant Moore said there are four detectives assigned to the shooting squad and they have to work when the shootings occur. Detective Nicholson said he is confident that Sergeant Moore has not used any profanity since I met with the DIS in February 2001. He said that Sergeant Moore has never said he doesn't give a fuck what people think because he has twenty years on the job.

According to Detective Nicholson, things have changed in the unit since I had my meeting with the unit. I asked Detective Nicholson what changes has he noticed? He said that no one uses profanity in the unit. He also said the environment is more professional since I had my meeting with them.

I asked Detective Nicholson about what he thought Sergeant Moore meant when he spoke to the unit about loyalty. Detective Nicholson said that Sergeant Moore not only speaks about loyalty to himself, but also loyalty to the lieutenant and major. Sergeant Moore told them they have to do what is required to get the job done. Sergeant Moore told the squad they couldn't be lazy. They have to exhaust all means to solve their cases. Detective Nicholson said they were not asked to do anything wrong. Detective Nicholson said that Sergeant Moore does not show favoritism. Sergeant Moore is fair to everyone.

Detective Nicholson said there was an occasion where Detective Robison was called in to work on an H-day and Robinson did not want to come to work. Detective

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

Nicholson said that no one likes to be called in on his or her days off, but it's part of being a detective. "Sergeant Moore does not treat any detectives any better than the others."

I asked Detective Nicholson about the procedures to work overtime and he said if they have a shooting that they have to stay past their shift they have to page Sergeant Moore and Lieutenant Mack and advise them they need to work overtime. Detective Nicholson advised me that Detective Wade was moved from the shooting squad to accommodate his personal schedule.

**Review of Past Grievances**

Detective Chris Wade has filed three grievances. The first was filed on November 15, 2000. In this grievance Detective Wade alleged that his overtime was not filed in a timely manner. I spoke with Lieutenant Mack about this on November 27, 2000 and he in fact acknowledged that there were times when he did not submit the detectives' overtime slips immediately after receiving them. Since he admitted that he did not always submit the detectives' overtime slips in the timeliest fashion, I reviewed General Order R-2 Overtime with Lieutenant Mack. Lieutenant Mack indicated that he understood the contents of the general order and that he would do better. Detective Wade accepted my decision on this grievance.

Detective Wade filed his second grievance that was dated January 11, 2001; however, I did not receive the grievance until February 5, 2001. At the same time I received the third grievance that was dated January 31, 2001.

The second grievance is the subject of the bulk of this report as it is the grievance that Detective Wade indicated he was not satisfied with my response.

The third grievance Detective Wade filed alleges that Detective Wade worked overtime on January 17, 2001 but Lieutenant Mack would not allow any of the sergeants to authorize any of his overtime. He alleges the same thing happened on January 24, 2001. Additionally, Detective Wade complained that he has to write, "a novel on the back of his overtime slips to state what he did, unlike the shooting squad who can work whenever they want without an explanation. Lastly, Detective Wade said that Sergeant Gardner told him that Lieutenant Mack would not allow him to authorize or certify his overtime.

A review of the overtime issues that Detective Wade complained of revealed that on January 17, 2001 Detective Wade responded into the Northwestern District to work overtime on a case related to the burglary of an ATM machine. However, Detective Wade failed to contact his sergeant or lieutenant to get authorization before he decided to come to work.

10

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

Because he did not obtain prior authorization to work overtime, his request for payment was denied. Detective Wade submitted copies of two overtime slips dated January 24, 2001 that he said his sergeant was not allowed to authorize.

The copies of the overtime slips Detective Wade attached did not contain a signature for authorization. However, Detective Wade was paid for the overtime he worked on January 24, 2001. In fact, Sergeant Douglas Gardner certified both the overtime slips and Lieutenant Mack authorized them. Admittedly, these two slips were submitted to the payroll clerks late (February 16, 2001). Letters were sent to the Central Payroll Office.

**Meeting with NWD DIS**

As a result of the grievances filed by Detective Wade, and conversations I had with Detectives Chris Wade, and Gregory Robinson, I decided to address the entire NWD DIS on February 9, 2001. I advised Lieutenant Mack to assemble the unit so I could address everyone. At approximately 1700 hours I responded to the Northwestern District and met the unit in the DIS office. The purpose of the meeting was to address the following issues:

- Overtime
- Alleged use of Profanity by DIS members
- Fair treatment
- Lack of Productivity in the unit
- Work assignments

The entire unit attended the meeting with the exception of Detective Dawn Cheuvront. Here are the notes from my meeting with the NWD DIS.

I informed the unit that I was not at the district on a pleasant visit, but I was there to deal with some problems that have been brought to my attention. I advised them that I was not there as anyone's friend, but I was there as their commanding officer. I was not on anybody's side. I also advised them that there were problems with overtime. First and foremost overtime is not a means for detectives to supplement their income. I explained to them that the purpose of overtime is to compensate members for work past their regular tour of duty when the department determines that it is necessary for them to work. The key is that the department, in this case the Lieutenant, is authorized according to the general order on overtime to make an immediate decision in cases of operational necessity to have members work past their scheduled tour of duty.

I made it clear that detectives must obtain authorization from their lieutenant before staying to work after their tour of duty.

11

## POLICE DEPARTMENT
## BALTIMORE, MARYLAND

Additionally, detectives must also obtain prior authorization before responding to work for overtime before their scheduled tour of duty. I emphasized that under no circumstances are they to take upon themselves to just show up for work and work overtime. I explained that this would help them because if we authorized them to work overtime then we can stand by our decision. I explained that the department is in fiscal crisis and as such we have to control overtime.

I instructed them that they had to document via report what work they did on overtime and what they accomplished on overtime. I advised them that they should be prepared to explain what they accomplished on overtime that they could not accomplish during their scheduled tour of duty.

I also advised Lieutenant Mack to immediately discontinue the practice of not allowing the sergeants to authorize overtime. I previously supported him in not allowing the sergeants to authorize overtime so he could monitor the overtime and control it, but Lieutenant Mack was not consistently submitting overtime for payment as soon as possible. I advised the unit that the sergeants could authorize the overtime in cases where an immediate decision was needed to authorize them to stay beyond their tour of duty.

### Alleged Use of Profanity

I was told that Sergeant Moore has used profanity in the work place. I was not told that he directed the profanity towards them as far as calling them profane names, but he sometimes used profanity when he spoke to them. I advised them that I know that all of them has used profanity in the past and discontinue the use of profanity in the workplace immediately. I advised them that I do not use profanity at all and I expect them to be able to control themselves. I advised them that as long as the agency has a rule against the use of profanity then I expect them to abide by the rules of the organization.

I informed them that if I became aware that they were using profanity in the work place I would deal with it very seriously. I then asked the entire unit if Sergeant Moore ever cussed at them. Everyone denied that Sergeant Moore ever used profanity toward him or her. I took this stance on this subject because realistically most police officers use profanity in their general conversation. I did not have any direct proof that any of them used profanity.

### Fair Treatment / Work Assignments

Some detectives felt like they were wrongfully reassigned from their preferred assignment and put into a squad investigating crimes they did not want to investigate. Specifically, Detective Tom Jeffries and Chris Wade wanted to investigate shootings. I informed the unit that we need good quality investigators in all areas of the DIS unit.

POLICE DEPARTMENT
BALTIMORE, MARYLAND

Everyone cannot be shooting investigators. I informed them that their assignments were ultimately my decision. I told them that they couldn't dictate to us where they will work. I told them we had a problem with clearing robberies along with shootings so I need good investigators to help clear robberies. However, I advised them that we would not capriciously move people just to move them. People will not be moved because of personal feelings or dislike for certain people.

I ordered everyone to stop the back biting, talking behind each other's back, and spreading rumors. I told them that I was aware that they had made certain comments about Lieutenant Mack. For example, the word in the Northwestern District was that Lieutenant Mack was going to be indicted over the Staples Store situation. People also spread a rumor that Lieutenant Mack was involved in the burglary of the Internal Affairs office. I told them unless they have first hand knowledge of knowing something was true not to pass it around.

I asked Lieutenant Mack to meet with the sergeants and reassess the personnel assignments over the next week. I told the detectives that I was not promising that anyone will be moved or put where they want to be just because they want to be in another squad, but we will consider making moves that are in the best interest of the unit. I advised the unit that everyone has to be treated fairly. There will be no preferential treatment.

**Lack of Productivity**

I told the unit that I was not satisfied with their lack of clearances especially in the areas of robberies and shootings. Although there are times when people will not cooperate with our investigations, we have to do a better job than we are doing. I told them that they need to focus more on the mission of the organization and focus less on their personal issues. I told them that it is time to do better work. Ultimately, we do not have to like each other, but we do have to work together for the period of time we are in the work place. We have to do whatever we need to do to work better together. I advised them that if they were such good investigators then they would lend their knowledge, talent, skills and ability to improve the quality of the whole unit.

I told them that if things did not improve anyone could be replaced regardless of rank or position because no one was indispensable. At this point I asked them if they understood what I was saying to them. They all acknowledged in the affirmative. I asked them if they had any questions for me. No one had any questions. At that point I concluded the meeting and left.

13

# POLICE DEPARTMENT
## BALTIMORE, MARYLAND

**Findings**

Northwestern District DIS detectives complained about the following issues:

- Lieutenant Mack did not submit overtime slips in a timely manner.
- Sergeant Moore moved Detective Wade out of the shooting squad without cause.
- Sergeant Moore questioned Detective Wade's loyalty because Detective Wade did not do everything Sergeant Moore wanted him to do.
- Sergeant Moore's attitude gave the detectives the impression that he could do whatever he wanted with impunity.
- Detective Wade and Detective Robinson complained that they were required to write more justification on their overtime slips than the shooting squad detectives who happened to be African-American.

My investigation into the grievances determined the following:

- By Lieutenant Mack's own admission, he did not always submit overtime slips in a timely manner. My examination of the payroll records revealed on average that overtime slips by Detective Wade were posted on the payroll within five (5) days of the overtime being worked. Although during the month of December 2000, it took seventeen days to post overtime for Detective Wade this was the exception rather than the rule.

  I also found instances where Detective Wade and Detective Robinson came in to work overtime without receiving the required authorization from Lieutenant Mack before they came to work on overtime. Lieutenant Mack subsequently went to the payroll clerk at the Northwestern District and requested to see the overtime that was submitted by his detectives so he could monitor the overtime being worked by his detectives. This resulted in delaying the amount of time it took for the detectives to get paid for their overtime. However, in every instance where the detectives worked legitimate overtime they got paid.

- Detective Wade believes he was moved out of the shooting squad for no reason. Sergeant Moore noted that he moved Detective Wade out of the shooting squad because of problems with loyalty and productivity. He noted that Detective Wade had a clearance rate of 38% on the shooting cases assigned to him. Sergeant Moore also mentioned that he believed burnout was becoming evident with some of the shooting squad detectives.

### POLICE DEPARTMENT
### BALTIMORE, MARYLAND

I examined the shooting cases assigned to Detective Wade in Lotus Notes
and determined that Detective Wade had a clearance rate of 40%.
Additionally, Assistant State's Attorney Andrea Mason told me during a
subsequent conversation that she felt Detective Wade was a good detective
because he was meticulous about his investigations. I also examined
Detective Wades personnel evaluation for the period ending on December
31, 2000. Sergeant Moore rated Detective Wade's performance as
excellent. Sergeant Moore also marked that he would be glad to have
Detective Wade in box 14 of Detective Wade's evaluation. Because
Sergeant Moore has not provided any documentation to substantiate his
claim that Detective Wade was not productive, I find that Detective Wade
should not have been moved out of the shooting squad based on a lack of
productivity.

- The issue of loyalty was of major concern to Detective Wade. According
  to Detective Wade, Sergeant Moore wrongfully accused him of not being
  loyal. Detective Wade said that Sergeant Moore accused him of not being
  loyal because he would not do things that Sergeant Moore wanted him to
  do that were wrong. At my request, Detective Wade submitted a list of
  things that he was asked to do that he felt were questionable. Although
  Detective Wade disagreed with Sergeant Moore on the best way to
  proceed in some of the investigations, the list does not contain anything in
  it that would be against departmental procedures or law, except bringing
  people into the station without doing involuntary detentions. Even with
  this the question is whether people were brought into the police station
  against their will or whether people were informed they could leave at
  anytime. It should be mentioned that Detectives Nicholson, Chesley, and
  Lansey said that Sergeant Moore never asked them to do anything that was
  improper.

As I previously mentioned I examined Detective Wade's personnel
evaluation. I saw where Sergeant Moore wrote "Detective Wade's loyalty
to this supervision has become questionable during this rating period." It
should be mentioned that Detective Wade had the opportunity to
document his disagreement with Sergeant Moore's assessment of his
loyalty by attaching a statement to his evaluation, but he did not.
Detective Wade marked the box, "I do not wish to make a statement" on
his evaluation. Sergeant Moore, when asked, said that he thought
Detective Wade was not loyal because Detective Wade spoke to other
people including me about his issues with Sergeant Moore as opposed to
dealing with him as the sergeant. Sergeant Moore would say that
Detective Wade jumped the chain of command and came to the major

15

**POLICE DEPARTMENT**
**BALTIMORE, MARYLAND**

when he should have spoken to the sergeant and the lieutenant first. Detective Wade mentioned that loyalty begets loyalty. Sometimes personal issues cloud our minds so we cannot focus on the really important issues. In this case crime reduction and solving cases. With regard to this matter, I find that both Sergeant Moore and Detective Wade were more concerned with personal loyalty than they were with being loyal to the mission of the Baltimore Police Department.

- In regards to the issue that the detectives felt that Sergeant Moore could do whatever he wanted with impunity, I observed that Sergeant Moore has a confident, sometimes arrogant attitude. Sergeant Moore would say that his comments about having twenty years on the job were taken out of context.

  I have determined that Sergeant Moore's statements adversely affected the morale of the detectives, but it is no question that Sergeant Moore is not above the disciplinary process of the department. I advised Sergeant Moore and the detectives of this fact. If anything is brought to my attention that constitutes an infraction by Sergeant Moore I will deal with it, period. The problem has been that people have wasted a considerable amount of time spreading rumors and innuendoes instead of putting their time and efforts into solving cases.

- While investigating the issue that some detectives have to provide more documentation on their overtime slips than others I interviewed Detectives Lansey, Nicholson, Chesley, and Gilmore. They all stated that their understanding was that they had to provide progress reports to document what they did on overtime. Detective Nicholson stated that Detective Wade, Detective Robinson, and Detective Smith took extra time to write documentation directly on their overtime slips when this was not required. I also found instances where other detectives did not provide extensive documentation directly on the overtime slip. I checked Lotus notes and found that in most cases there were progress reports that matched with the overtime.

**Conclusion**

Although there are indications that some things improved in the unit, there are still personnel problems in the unit. The consensus among Detectives Wade, Robinson, and Smith is that they are treated unfairly, especially when it comes to overtime pay and shooting squad assignments. On the other hand, the African American Detectives feel that Sergeant Moore is being wrongfully accused because the white detectives can't have their way. I have seen some problems on both sides, some with the detectives and some with Sergeant Moore and Lieutenant Mack.

### POLICE DEPARTMENT
### BALTIMORE, MARYLAND

The bottom line is that shooting cases are not being solved. The personal feelings of the detectives have interfered with their ability to solve the cases. Detectives Wade, Robinson, and Smith can blame Sergeant Moore for their difficulty; however, that does not fully explain why they have not been able to be productive. In contrast, Sergeant Moore is knowledgeable about shooting investigations, but he has not been able to overcome the situation and bring out the best in all his people. Till now the main solution to the problems has been moving people out of the shooting squad. With this course of action we will eventually run out of places to put people.

**Course of Action**

My plan is to revamp the Northwestern District DIS. I would like to have a new lieutenant at the NWD DIS. A new lieutenant who is focused on solving cases and allocating our detectives fairly without personal bias will directly improve performance and morale. Additionally, I would like to move Sergeant Moore to the SWD DIS and have a new sergeant over the shooting squad in the NWD DIS. This would allow me to more accurately determine who really wants to work and who does not. A new lieutenant and sergeant can help assess the unit and determine who can clear the shooting cases and be productive. This move would also allow me to give Sergeant Moore one last opportunity to demonstrate he has value to the area. I have implemented the department's overtime control procedures and advised everyone that we have to monitor and control overtime. Detectives have been directed to contact their supervisor and lieutenant before staying past their shift or responding from home to work daily overtime. Supervisors will justify the need for daily overtime in writing. Detectives and supervisors will be held accountable for solving assigned cases.

Lastly, under a restructuring of the Northwestern District DIS I will re-assign Detective Chester Smith and Chris Wade to the shooting squad.

Antonio Williams
Major

Attachments

17