## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GREGORY ROBINSON, *et al.*          *

    Plaintiffs          *

v.          *          Case No. WDQ-02-CV-3236

BALTIMORE POLICE DEPT., *et al.*          *

    Defendants          *

*          *          *          *          *          *          *

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs, by and through their attorneys Duane A. Verderaime and Verderaime and DuBois, P.A., hereby respond to defendants' Motions for Summary Judgement. All motions filed on behalf of the defendants will be addressed in this single response, as further explained herein.

### I. BACKGROUND

Plaintiffs have filed a multi-count suit against defendants, Sergeant William Booker, Sergeant Sonya Young, Sergeant Darryl Moore, former Lieutenant John Mack, and the Baltimore Police Department under Title VII, (Count I); 42 U.S.C. §1981, (Count II); negligent hiring and retention (Count III); Civil Conspiracy (Count IV); Retaliation (Count V); First and Fourteenth Amendments (Counts VI, and VII); 42 U.S.C. §1983, (Count VIII); and the

Maryland Declaration of Rights (Count IX). [1]

As stated in defendants motions for summary judgement, plaintiffs Robinson, Wade, and Smith, state that plaintiffs' superior officers within the BPD a) would routinely refuse to assign the plaintiffs as Officer in Charge but instead would appoint African American officers; b) would scrutinize or deny the plaintiffs overtime slips while summarily signing the overtime slips submitted by the African American officers; c) cancel the plaintiffs H-days to accommodate leave requests of African American officers; d) made racially suggestive comments regarding the composition of the plaintiffs' squad.

In addition, race-based comments were made by Defendant Young and Defendant Moore and that white officers were removed from the unit and replaced with African Americans, causing missed opportunities and discriminatory tactics.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that where there is no genuine material issue of fact, and the moving party is entitled to judgement as a matter of law, summary judgement is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). To defeat

---

[1] Defendants Mayor and City Council of Baltimore, former Police Commissioner Edward Norris, and Major Antonio Williams have been dismissed.

2

summary judgment, the plaintiff must put forward admissible evidence as to a genuine issue of material fact. Anderson, 477 U.S. et 252.

## III. PROCEDURAL ARGUMENT

Defendants' motions for summary of judgement should be denied because a) defendants failed to meet the filing deadline pursuant to the court's scheduling order and b) there are genuine material issues of fact of admissible evidence for which a reasonable trier of fact could find in favor of the plaintiffs.

### a. Defendants Failed to File a Timely Motion

Under the Court's scheduling order, dated November 13, 2003, the deadline for defendants' Omnibus Joint Motion for Summary Judgment was January 16, 2004. On many issues, if not all, presented in defendants motions for summary judgement, they elected to file Omnibus Separate Motions for Summary Judgment. As per the Court's Order, Defendants were to file an Omnibus Joint Defendants Motion for Summary Judgment, in order to efficiently argue certain issues common to the defense of the case.

A reading of defendants' motions for summary judgment reveals that these common issues were not raised in an Omnibus motion, but through separate motions. Defendants raised and addressed the following issues:

### 1. 42 U.S.C. § 1981 (Count II)

3

In response to plaintiffs' allegations under Count II, 42 U.S.C. § 1981 - Retaliation/ Desperate Treatment, the defendants argue the identical issues in their defense. These issues, that " . . . plaintiffs' participated in the BPD's, and later the EEOC's grievance process," as stated by all defendants, and are common to all defendants. The same factual and legal arguments are presented as common issues. <u>See</u>, Baltimore Police Department's Summary Judgment Motion,  page 8, Booker and Moore's Motion, page 24, and Young and Mack's Motion, page 32.

### 2.   Civil Conspiracy (Count IV)

Plaintiffs count alleging civil conspiracy is one that begs to be addressed in an omnibus motion. Defendants addressed Count IV with identical issues to the defense of the claim.    <u>See</u>, BPD's Summary Judgment Motion,  pages 10-11 , Booker and Moore's Motion, page 24, and Young and Mack's Motion, pages 34-35.

### 3.   1st Amendment, (Count VI), 14th Amendment, (Count VII), and Art. 24 of the Maryland Declaration of Rights, (Count IX).

Defendants state in their motions that "[p]laintiffs' claims of denial of due process can presumably be found in their reassignments and alleged disparate treatment vis-à-vis the African American detectives in the unit." Factually and legally, defendants

4

have raised issues that are common to all defendants. See, BPD's
Summary Judgment Motion,  pages 11-13 , Booker and Moore's Motion,
pages 24-25, and Young and Mack's Motion, pages 35-37.

### 4.   Title VII Claims-Discrimination; 42 U.S.C.  §
         1981-Retaliation; 42 U.S.C. § 1983

Plaintiffs have made claims under Title VII asserting that
their rights have been violated pursuant to 42 U.S.C. Sections
1981, 1983, and 2000 et seq.  Defendants have responded to these
violations by making purely legal arguments common to all
defendants as evidenced by defendants' motions.  See, BPD's Summary
Judgment Motion,  pages 4-6 , Booker and Moore's Motion, pages 5-6,
and Young and Mack's Motion, pages 30-32.

The  above  mentioned  counts  have  been  addressed  by  all
defendants factually, legally, and identically as themes to all
defendants.   Under the court's order, common issues were to be
filed in the Omnibus Joint Motion.  However, defendants have failed
to delineate any of the above mentioned counts as not having common
issues for which should have been addressed by January 16, 2004.

Therefore, plaintiffs request that defendants' arguments as to
these counts be denied in that they have been addressed as being
common issues and thus have failed to file a timely response.

5

Notwithstanding the fact that defendants failed to file a timely motion on common issues, plaintiffs, rather than responding in kind and filing three separate yet similar responses, submit this motion addressing the motions filed by all defendants.

## b.   GENUINE ISSUES OF MATERIAL FACT

### 1) Officer-in-charge assignments

Plaintiffs allege that as a result of discriminatory treatment, their African American supervisors would routinely appoint African American officers to act as officers-in-charge when the sergeant was not working.   However, they would routinely overlook plaintiffs for such appointment. "When Defendant Sergeant Booker was not on duty, and if an African American was not available then he would not appoint an officer-in-charge" (See exhibit 1, interrogatory answer of Plaintiff Robinson, number 6, exhibit 2 interrogatory answer of Plaintiff Smith, number 3, and exhibit 3 interrogatory answers of Chris Wade, number 2). As seen in exhibit 4, copies of officer-in-charge assignment sheets, when supervisors Sergeant Booker and Sergeant Moore are not working, they assign an African American as officer-in-charge.

Baltimore Police Department General Order 69-77, B-7, December 2, 1977, Subject, Selection and Identification of the Officer-in-Charge, states that the;

6

POLICY

        To provide sworn personnel under individual commands
the opportunity to gain insights and attain skills in the
art of supervision, it is the policy of this agency to
develop subordinates to assume the role of Officer-in-
Charge (OIC).

PURPOSE

        The purpose of this order is to recodify and
promulgate procedures governing the selection and
identification of the OIC.

REQUIRED ACTION

I.      Commanding Officers shall have the mandated
        responsibility to comply with the following
        guidelines when selecting personnel under their
        commands to be assigned as an OIC.

        A.      The opportunity to work in an OIC capacity
                shall be open to all qualified officers.
                Qualified officers shall be interpreted to mean
                the individual:

                        Has displayed leadership qualities.
                        Is able to organize his work and
                        competently complete assignment.
                        Has demonstrated sufficient job knowledge.
                        Expresses a desire to do the job.

        B.      OIC assignments may and should be rotated among
                personnel when practical, to include but
                not be limited to those persons on active
                promotional lists. (see exhibit 4, General
                Order 69-77).

        In addition, under section III, where possible the immediate

supervisor may and should rotate OIC assignments among his most

capable officers to avoid developing an indispensable officer by

concentrating on only one individual (see exhibit 4).

                                7

Defendants argue that since occasionally the OIC time was assigned on the basis of seniority, and that several plaintiffs understood that that was the policy of their supervisor that the practice is sufficient. However, this policy directly violates the Baltimore Police Department general order. Defendants violated the general order policy in order to appoint the African Americans as officers-in-charge and to not appoint plaintiffs Robinson, Smith, and Wade. Plaintiff Robinson states in his deposition that when the senior African American officer was not on duty, then the unit would go without an OIC for that day (See, exhibit 5, Robinson deposition page 150: 4-12). After Robinson complained to Sergeant Booker about Defendant Young making a racial comment and being offended by it, at that point, Defendant Booker retaliated against plaintiff by failing to appoint him as OIC. (See exhibit 5 pages 37-39.) "Hey, listen, I need to make it clear." I said, "I believe I'm being retaliated in reference to not getting OIC time." This was the discussion between Plaintiff Robinson and Detective Booker. (See exhibit 5 page 39: 1-9), which also states that Detective Booker and Plaintiff Robinson came to a conclusion that it was an oversight and that it would be changed, however, the OIC assignments never did change. "After plaintiffs filed the present lawsuit, Sergeant Booker began to appoint Detective Robinson to the OIC position." See exhibit 1 page 7.

8

2. Scrutinizing of Overtime Slips

Plaintiffs Robinson, Smith, and Wade contend that defendants would harass them and scrutinize their overtime slips, demanding explanation for the overtime hours, threatening to not pay the overtime hours without the added justification. In contrast, the African American officers were summarily granted overtime without the necessity of questioning or supplying additional information as to the justification for the overtime. (See exhibit 6, overtime slips of white officers compared to exhibit 7, overtime slips of African American officers.) The slips clearly show that for the majority of slips submitted explanations were required by plaintiffs and not their African American counterparts.

3. Racial Comments

Plaintiff Robinson's testimony is that as he entered the room at the police district, Defendant Young "lifted her head, looked me dead in the eye, made the statement, never, never missing eye contact with me," when she stated "That's why I hate working with light-skinned people" (See exhibit 5 Robinson deposition page 133). "I just know that statement was meant for me, not only to hurt my feelings, it was, it was a racial statement made right at me." (Exhibit 5, page 134)

Defendant Young admits making the statement. "I don't recall exactly what I said, but I know it was pertaining to light-skin

9

getting over, which is something that African Americans joke about all the time. . ." Plaintiff Robinson was present for the comment, and whether or not it was directed toward him he was offended by the comment and took it as a racially motivated statement. (See exhibit 8 Defendant Young's deposition, page 88: 1-7).

"I would have hoped anybody in that room would have been offended by it, but I wasn't worried about them. My main objective, goal, whatever you want to say, is myself. I don't control anybody else. She said it, it offended me. If they weren't offended, that's them. I don't answer for them. I'm telling you I was offended." (Exhibit 5 Robinson's deposition page 171: 19-172:4).

4. Other Discriminatory Treatment by Defendants

In addition to having the overtime slips scrutinized and delayed, by Lt. Mack, in December of 2000, Plaintiff Wade was denied his three K-days and informed that no one was allowed off during New Year's Eve. However, two African Americans were granted leave by Lieutenant Mack. On March 16, 2001 Plaintiff Robinson requested to be detailed to attend a police funeral. However, he was told by Defendant Young that if he wanted to go he had to go on his own time. However, Defendant Young then authorized African American officers to be detailed to the police funeral.

Also, under the supervision of Defendant Sergeant Moore,

10

"white Detectives have been transferred, detailed (as punishment) or asked to leave the squad. This started with Detective T. Jefferies. Detective Jefferies is/was our most experienced detective in shootings (coming from homicide). Detective Jefferies is also certified as an instructor in voice stress analyst. Next, once we were going to specialized units, Detective Robinson was advised that he was going to robberies and Detective M. Wallace (African American) was going to shootings under Sgt. Moore. Detective Wallace stated that she did not want to do shootings and returned to robberies. Detective Robinson returned to shootings. Only once has a black Detective (G. Gilmore) been transferred, this was due to personality conflict with Sgt. Moore and in fact Det. Gilmore was brought back into the squad to replace Detective C. Smith when he was transferred out. Reminder, all these moves have to go through Lt. Mack before the moves are final. So he (Lt. Mack) is aware of all conduct in this Unit. Detective G. Robinson had been brought back into the squad (a 2nd time) solely because of Det. A. Lansey's (African American) numerous refusals to Sgt. Moore about his returning to the squad. Upon Det. Robinson's return to the squad, he was told that if he committed any infraction (loyalty/filing grievances) he would immediately be bounced from the squad. Sgt. D. Gardner made a statement that one of his Detectives was not pulling his weight and asked the Lieutenant to

11

transfer him, he was told he had to keep him. In comparison, every time Sgt. Moore wanted to get rid of someone, it was done the next day. Also, the above referenced Detectives are fed up with Sgt. Moore's statement of "if you have a problem we can go to the garage and fight, I'd rather handle it this way." This is a good example of a supervisor intimidating a Detective that is only 5'06" tall. If the Department would charge an Officer for threatening a citizen, they should frown upon this Supervisors tactics." (All of the above cited in exhibit 9, which is part of exhibit 1 of Detective Keith Stagger's of the Police Department's EEO compliance unit, deposition).

All of the above factual scenarios demonstrate a hostile work environment and desperate treatment for which plaintiffs were subjected to adverse working conditions and missed pay and supervisor experience through being excluded from serving as officers-in-charge.

## IV.    LEGAL ARGUMENT

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of evidence."

12

<u>Faragher v. City of Boca Raton</u>, 118 S.Ct. 2275, 2292, 2293 (1998).

The affirmative defense has two elements.  First, that the employer exercised reasonable care to prevent and correct any harassing behavior and second that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. <u>ID. et 2293.</u>  The employer has a burden of proof on both elements.

Defendants admit, in their motions for summary judgement, that all the plaintiffs took advantage of the Baltimore Police Department's policies.  However, the department failed to complete the investigation within the 60 day requirement under the Department's general orders.

In addition, other than the plaintiffs, no individuals were interviewed as a result of plaintiffs' complaint and subsequent Police Department's investigation.  Question to Detective Staggers, "Did you feel there was any merit to Detective Robinson's complaint?"  Answer, "Absolutely not."  (Exhibit 10 deposition of Detective Keith Staggers page 22:18-20).  "Who did you contact in reference to these allegations?"  "I didn't contact anyone."  (Page 33:4-6).

"Is there any reason why [the plaintiffs] were not interviewed until September?"  A.  "I concluded that this case was going to be administratively closed or unfounded."  (Page 34:10-15).

13

The defendant police department had concluded that plaintiffs complaints had no merits without doing an investigation required under the general orders and within the time frame permitted. It was summarily dismissed.

**V.   CONCLUSION**

In order to defeat a motion for summary judgement, the plaintiff must put forward admissible evidence of genuine issue of material fact. Inasmuch as plaintiff has presented numerous issues of material fact, through their pleadings, responses, and exhibits to all motions. As a result of defendants' conduct as stated herein, plaintiffs have been subjected to hostile working conditions, offensive racial comments, discriminatory treatment, and have been harmed.

Duane A. Verderaime
Verderaime & DuBois, P.A.
1231 North Calvert Street
Baltimore, Maryland 21202
(410) 752-8888
Federal Bar #023874

Attorneys for Plaintiffs

14