## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY ROBINSON, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | Case No. WDQ-02-CV-3236 |
| BALTIMORE POLICE DEPT., *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

### ANSWERS TO INTERROGATORIES

TO:  Baltimore Police Department, one of the Defendants

FROM:  Chester P. Smith, one of the Plaintiffs

The plaintiff, Chester P. Smith, by and through his attorneys, Duane A. Verderaime and Verderaime & DuBois, P.A., for answers to interrogatories heretofore pro-pounded by the defendant, Baltimore Police Department, answers as hereinafter set forth:

A. The information supplied in these answers is not based solely on the knowledge of the executing party, but includes the knowledge of the party's agents, representatives, and unless privileged, attorneys.

B. The word usage and sentence structure are that of the attorney assisting in the preparation of these answers and does not necessarily purport to be the precise language of the executing party.

**INTERROGATORY NO. 1**: Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint, and state the subject matter of the personal knowledge possessed by each such person.

**ANSWER NO. 1**: I met with Major Williams on one occasion and advised him of the concerns that myself, Det. Robinson, and Det. Wade had with Lt. John Mack and Sgt. D. C. Moore. Major Williams was advised of the discrimination that we believed to be occurring, as well as unfair treatment of the above-mentioned. The transferring of myself, Det. Wade, and Det. Robinson and the illegal acts (violation of civil rights) that Lt. Mack and Sgt. D. C. Moore wanted the above mentioned to perform.

Maj. Williams had knowledge of the black detectives being treated better than white detectives.

Black detectives' overtime slips were never scrutinized and sent through. However, white detectives had overtime slips held and scrutinized.

Detectives were told to locate prostitutes on the street and bring them into the station for questioning in regards to shootings.

Sgt. Moore (under the direction of John Mack), reassigned me to the robbery unit because I was not loyal.

Sgt. Moore constantly referred to a photograph of an old South District Distressed Neighborhood Unit which consisted of eight African-American officers and two white

2

officers, and would state this is the type of squad I would like to have.

Sgt. Moore would tell me on several occasions that blacks could not be racist.

Sgt. Moore would state on different occasions that he was "untouchable." He knows people in high places (referring to Comm. Daniels and Dist. Comm. Powell).

**INTERROGATORY NO. 2**: Itemize and show how you calculate any damages claimed by you in this action, whether economic, non-economic, punitive, or other.

**ANSWER NO. 2**: Dawn Cheuvront was out of work from December 2000 through June 29, 2001, due to pregnancy and had to loose medical days as a result. When she returned to work on June 29, 2001, she requested special work assignment due to a pregnancy. Defendant Young said that there will be no more special scheduling for pregnancies, and scheduled plaintiff Cheuvront to work a rotating schedule of day and night shifts. As soon as plaintiff Cheuvront went out of the unit on medical leave, defendant Young ordered that all work would be day shift and there would be no need for rotating night-shift work. Plaintiff Cheuvront was never appointed O.I.C. and, therefore, was precluded from receiving O.I.C. pay and potential promotional benefits as a result of supervisor positions. Christine Coleman, an African American female within the unit, was frequently appointed to the O.I.C. position. In addition, a new officer to the unit, with less seniority than plaintiff Cheuvront, Danyette Swanson, an African American female would be appointed O.I.C., which was a direct discrimination against plaintiff Cheuvront.

In reference to plaintiffs Robinson, Smith, and Wade, they were not appointed as O.I.C.'s even when comparably-placed or lower-seniority African Americans were appointed. When defendant Sgt. Booker was not on duty, and if an African American was not available, then he would not appoint an officer in charge. If an African American was available, then he would appoint that individual as the O.I.C. For example:

```
October 27, 2001    — No O.I.C.
October 28, 2001    — No O.I.C.
October 29, 2001    — No O.I.C.
November 10, 2001   — No O.I.C.
November 11, 2001   — No O.I.C.
November 17, 2001   — No O.I.C.
November 18, 2001   — No O.I.C.
November 19, 2001   — No O.I.C.
November 25, 2001   — No O.I.C.
December 9, 2001    — African American O.I.C.
December 11, 2001   — African American O.I.C.
December 17, 2001   — African American O.I.C.
December 21, 2001   — African American O.I.C.
December 22, 2001   — No O.I.C.
December 23, 2001   — African American O.I.C.
December 24, 2001   — African American O.I.C.
December 31, 2001   — African American O.I.C.
January 4, 2002     — African American O.I.C.
January 6, 2002     — No O.I.C.
January 8, 2002     __ African American O.I.C.
January 14, 2002    __ African American O.I.C.
January 19, 2002    __ African American O.I.C.
January 20, 2002    __ African American O.I.C.
February 24, 2002   — African American O.I.C.
March 3, 2002       — African American O.I.C.
March 11, 2002      — African American O.I.C.
March 17, 2002      — No O.I.C.
March 30, 2002      — African American O.I.C.
```

| Date | Status |
|---|---|
| March 31, 2002 | — No O.I.C. |
| April 4, 2002 | — No O.I.C. |
| April 5, 2002 | — African American O.I.C. |
| April 8, 2002 | — African American O.I.C. |
| April 9, 2002 | — African American O.I.C. |
| April 10, 2002 | — African American O.I.C. |
| April 13, 2002 | — No O.I.C. |
| April 14, 2002 | — No O.I.C. |
| July 14, 2002 | — African American O.I.C. |
| July 16, 2002 | — African American O.I.C. |
| July 17, 2002 | — African American O.I.C. |
| July 21, 2002 | — No O.I.C. |
| July 27, 2002 | — African American O.I.C. |
| July 28, 2002 | — African American O.I.C. |
| July 31, 2002 | — African American O.I.C. |
| August 1, 2002 | — No O.I.C. |
| August 2, 2002 | — African American O.I.C. |
| August 3, 2002 | — African American O.I.C. |
| August 4, 2002 | — No O.I.C. |
| August 9, 2002 | — No O.I.C. |
| August 10, 2002 | — African American O.I.C. |
| August 11, 2002 | — No O.I.C. |
| August 12, 2002 | — African American O.I.C. |
| August 17, 2002 | — No O.I.C. |
| August 18, 2002 | — No O.I.C. |
| August 25, 2002 | — African American O.I.C. |
| August 31, 2002 | — African American O.I.C. |
| September 1, 2002 | — African American O.I.C. |
| September 6, 2002 | — No O.I.C. |
| September 9, 2002 | — African American O.I.C. |
| September 10, 2002 | — African American O.I.C. |
| September 14, 2002 | — No O.I.C. |
| September 15, 2002 | — African American O.I.C. |
| September 23, 2002 | — African American O.I.C. |
| September 28, 2002 | — No O.I.C. |
| September 29, 2002 | — African American O.I.C. |
| October 4, 2002 | — African American O.I.C. |
| October 5, 2002 | — African American O.I.C. |

(See previously submitted Exhibit R.) Additional dates will be added when a printout from the Department is obtained.

After plaintiffs filed the present lawsuit, Sgt. Booker began to appoint Det. Robinson to the O.I.C. position, as evidenced on March 10 and 16 of 2003. (See previously submitted Ex. R.) These are the only time sheets available to plaintiffs at this time. However, this conduct is prevalent in all relevant times.

In addition, African Americans in the unit, such as Alvin Gwynn, were allowed to be detailed to study for the sergeant's exam, while plaintiff Robinson was denied a similar request, thereby having less opportunities to study and a lower expectation of scoring well on the exam.

**INTERROGATORY NO. 3**: For each witness you have retained or specially employed to provide expert testimony in this case, and whom you expect to testify at trial, provide a complete statement of the opinions to be expressed; basis and reasons therefore; and whether said expert witness has ever been disqualified as an expert witness in an employment discrimination case.

**ANSWER NO. 3**: None.

**INTERROGATORY NO. 4**: If you have ever made a formal claim, charge, or complaint of discrimination or harassment of any kind, with any employer (including your present employer), please set forth the date and place it was made, the name and address

of the employer against whom it was made, the basis of the claim, and the ultimate disposition thereof.

**ANSWER NO. 4**: See exhibits for E.E.O.C. and E.E.O.

**INTERROGATORY NO. 5**: Fully identify each act or omission by the Baltimore Police Department, its employees or agents, which you contend constitutes discrimination, harassment, and/or retaliation, identifying when each such act or omission occurred, all persons who have knowledge of the act or omission, and any documentation in your possession relating to any act or omission.

**ANSWER NO. 5**: In addition to all exhibits and previous and subsequent answers, Baltimore Police Department EEOC failed to investigate. Chet Smith was retaliated against by Lt. Joe Peters, due to the law suit. I was involuntarily transferred from C.I.D. to S. D. due to the lawsuit and grievances (see attached memo).

**INTERROGATORY NO. 6**: If you contend that any employee(s) of the Baltimore Police Department ever made any statement about any person or committed any act which you claim supports your allegations of discrimination, harassment, retaliation, or any other allegations in your Complaint, then set forth all details, including but not limited to, the identity of the employee(s), the time, place, and exact nature of the act or statement, the names of all persons who were present, and your source of knowledge.

**ANSWER NO. 6**: See answer to No. 5.

**INTERROGATORY NO. 7**: If you, or anyone acting on your behalf, obtained statements in any form from any person regarding any of the facts alleged in your Complaint, fully identify each such person and state the date on which such statement(s) was taken, the names and addresses of the persons who took such statement(s), a transcript of each recorded oral statement, and a detailed summary of each such non-recorded oral statement.

**ANSWER NO. 7**: None.

**INTERROGATORY NO. 8**: Itemize all expenses and other economic damages, past and future, that you claim are a result of the occurrence and as to each item claimed, identify the item, the amount claimed for that item, the method, if any, by which you computed the amount, the figures used in that computation, and the facts and assumptions upon which your claim is based.

**ANSWER NO. 8**: <u>Past damages</u>: In reference to plaintiffs Robinson, Smith, and Wade, they were not appointed as O.I.C.'s even when comparably-placed or lower-seniority African Americans were appointed. When defendant Sgt. Booker was not on duty, and if an African American was not available, then he would not appoint an officer in charge. If an African American was available, then he would appoint that individual as the O.I.C. For example:

        October 27, 2001   — No O.I.C.
        October 28, 2001   — No O.I.C.

```
October 29, 2001    — No O.I.C.
November 10, 2001  — No O.I.C.
November 11, 2001  — No O.I.C.
November 17, 2001  — No O.I.C.
November 18, 2001  — No O.I.C.
November 19, 2001  — No O.I.C.
November 25, 2001  — No O.I.C.
December 9, 2001    — African American O.I.C.
December 11, 2001  — African American O.I.C.
December 17, 2001  — African American O.I.C.
December 21, 2001  — African American O.I.C.
December 22, 2001  — No O.I.C.
December 23, 2001  — African American O.I.C.
December 24, 2001  — African American O.I.C.
December 31, 2001  — African American O.I.C.
January 4, 2002     — African American O.I.C.
January 6, 2002     — No O.I.C.
January 8, 2002     __ African American O.I.C.
January 14, 2002    __ African American O.I.C.
January 19, 2002    __ African American O.I.C.
January 20, 2002    __ African American O.I.C.
February 24, 2002   — African American O.I.C.
March 3, 2002       — African American O.I.C.
March 11, 2002      — African American O.I.C.
March 17, 2002      — No O.I.C.
March 30, 2002      — African American O.I.C.
March 31, 2002      — No O.I.C.
April 4, 2002       — No O.I.C.
April 5, 2002       — African American O.I.C.
April 8, 2002       — African American O.I.C.
April 9, 2002       — African American O.I.C.
April 10, 2002      — African American O.I.C.
April 13, 2002      — No O.I.C.
April 14, 2002      — No O.I.C.
July 14, 2002       — African American O.I.C.
July 16, 2002       — African American O.I.C.
July 17, 2002       — African American O.I.C.
July 21, 2002       — No O.I.C.
```

| Date | O.I.C. |
|---|---|
| July 27, 2002 | — African American O.I.C. |
| July 28, 2002 | — African American O.I.C. |
| July 31, 2002 | — African American O.I.C. |
| August 1, 2002 | — No O.I.C. |
| August 2, 2002 | — African American O.I.C. |
| August 3, 2002 | — African American O.I.C. |
| August 4, 2002 | — No O.I.C. |
| August 9, 2002 | — No O.I.C. |
| August 10, 2002 | — African American O.I.C. |
| August 11, 2002 | — No O.I.C. |
| August 12, 2002 | — African American O.I.C. |
| August 17, 2002 | — No O.I.C. |
| August 18, 2002 | — No O.I.C. |
| August 25, 2002 | — African American O.I.C. |
| August 31, 2002 | — African American O.I.C. |
| September 1, 2002 | — African American O.I.C. |
| September 6, 2002 | — No O.I.C. |
| September 9, 2002 | — African American O.I.C. |
| September 10, 2002 | — African American O.I.C. |
| September 14, 2002 | — No O.I.C. |
| September 15, 2002 | — African American O.I.C. |
| September 23, 2002 | — African American O.I.C. |
| September 28, 2002 | — No O.I.C. |
| September 29, 2002 | — African American O.I.C. |
| October 4, 2002 | — African American O.I.C. |
| October 5, 2002 | — African American O.I.C. |

(See previously submitted Exhibit R.)

After plaintiffs filed the present lawsuit, Sgt. Booker began to appoint Det. Robinson to the O.I.C. position, as evidenced on March 10 and 16 of 2003. (See previously submitted Ex. R.) These are the only time sheets available to plaintiffs at this time. However, this conduct is prevalent in all relevant times. Additional calculations and losses to be made.

<u>Future damages</u>: In addition to detective status and overtime pay, I have been denied employment from other law enforcement agencies.

**INTERROGATORY NO. 9**: State whether you claim past or future loss of earnings or earning capacity as a result of the occurrence and, if so, state for each category the amount claimed, the method by which you computed that amount, the figures used in that computation, and the facts and assumptions upon which your claim is based.

**ANSWER NO. 9**: See answer No. 8.

**INTERROGATORY NO. 10**: If you submitted a grievance through the Baltimore Police Department's grievance procedures regarding any matter set forth in your Complaint, for each such grievance, please describe the substance of the grievance, identify any person with whom you discussed your grievance, the date of each discussion, each action taken pursuant to each discussion, the substance of each conversation, whether an investigation was undertaken into your grievance, the substance of any reports written regarding your grievance, and person who considered or reviewed your grievance and their decision regarding your grievance.

**ANSWER NO. 10**: Please refer to previously submitted Exhibit N.

**INTERROGATORY NO. 11**: If you contend that you have been denied overtime opportunities during your employment with the BPD, please state in detail all such facts supporting your contention.

11

**ANSWER NO. 11**: N/A

**INTERROGATORY NO. 12**: If you contend that your request for overtime payments during your employment with the BPD were denied, delayed, or discounted, please state in detail all such facts supporting your contention.

**ANSWER NO. 12**: On numerous occasions, I would request overtime under Sgts. Booker and Moore. These requests were denied and then the same overtime would be granted to African-American officers. Overtime that I worked was questioned, and I was required to document what the overtime was used for and what case was worked on. The African-American officers could turn in blank or almost blank slips with no supporting documentation and their overtime would be granted. In addition, once approved, my overtime was held and I would not get paid on that overtime for several weeks.

**INTERROGATORY NO. 13**: If you contend that during your employment with the BPD you were provided less favorable leave benefits than similarly-situated African-Americans, please state in detail all such facts supporting your contention.

**ANSWER NO. 13**: N/A

**INTERROGATORY NO. 14**: If you contend that during your employment with the BPD you were denied educational or study review opportunities, please state in detail all such facts supporting your contention.

**ANSWER NO. 14**: N/A

12

**INTERROGATORY NO. 15**: State all facts upon which you rely to support your contention, in Paragraph 28 of the Complaint, that "Plaintiffs were continually denied leave, details, promotions, supervisory positions and pay, and are subjected to harassment and disparate treatment because of their race, despite the fact that they are qualified and in similar [sic], if not more tenured positions."

**ANSWER NO. 15**: See Answer No. 12 and other answers and exhibits.

**INTERROGATORY NO. 16**: State all facts upon which you rely to support your contention, in Paragraph 33 of the Complaint, that "Plaintiffs were denied promotion, promotional opportunities, and equal treatment, and given involuntary transfers and demotions, and subjected to harassment and disparate treatment because of their race and/or gender, and/or because they complained about the discriminatory treatment, or illegal activities."

**ANSWER NO. 16**: Please see Answer No. 12 and other answers and exhibits.

**INTERROGATORY NO. 17**: If you contend that you complained to any person(s) employed by the Baltimore Police Department of any event of unlawful discrimination, harassment, and/or retaliation, please state the substance of your complaint(s), the date of your complaint(s), whether an investigation(s) regarding your complaint(s) occurred, and identify the person(s) to whom you complained, and any documents you possess which support your contention.

**ANSWER NO. 17**:  Please see Answer Nos. 1 to 5.

**INTERROGATORY NO. 18**:  Do you know of any statement, conversation, comment, report or admission against interest or <u>res gestae</u> statement made by any Defendant in this action, concerning the subject matter of this action or facts relevant to any issue in this case.  If your Answer is "yes," state the content of said statement, conversation, comment or report, the place where it took place, the name, address and telephone number to whom each statement was made, and in whose presence it was made.

**ANSWER NO. 18**:  Please see Answer No. 1.

**INTERROGATORY NO. 19**:  If you contend that you have been retaliated against for exercising your First Amendment rights, please describe the context of your communication(s), including but not limited to, the substance of your communication(s), the date of your communication(s), how you communicated (orally or in writing), and identify the recipient of your communication(s) and witnesses thereto.

**ANSWER NO. 19**:  Please see Answer No. 1 and Answer No. 5.

I HEREBY CERTIFY, declare and affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my information, knowledge and belief.

_____
Chester P. Smith

\*       \*       \*

_____
Duane A. Verderaime
Verderaime & DuBois, P.A.
1231 North Calvert Street
Baltimore, Maryland 21202
(410) 752-8888

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of _____, 2003, a copy of the foregoing was mailed by first-class mail, postage prepaid, to:

Troy A. Priest, Esquire
Michael A. Brown, Esquire
Brown, Diffenderffer & Kearney, LLP
1010 Hull Street, Suite 300
Baltimore, Maryland 21230
*Attorneys for Defendants Young and Mack*