# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GREGORY ROBINSON, *et al.*                    *

    Plaintiffs                                        *

v.                                              *          Case No. WDQ-02-3236

BALTIMORE POLICE DEPT., *et al.*              *

    Defendants                                       *

          *     *     *     *     *     *     *

## ANSWERS TO INTERROGATORIES

TO:       Baltimore Police Department, one of the Defendants

FROM:    Chris Wade, one of the Plaintiffs

The plaintiff, Chris Wade, by and through his attorneys, Duane A. Verderaime and Verderaime & DuBois, P.A., for answers to interrogatories heretofore pro-pounded by the defendant, Baltimore Police Department, answers as hereinafter set forth:

A. The information supplied in these answers is not based solely on the knowledge of the executing party, but includes the knowledge of the party's agents, representatives, and unless privileged, attorneys.

B. The word usage and sentence structure are that of the attorney assisting in the preparation of these answers and does not necessarily purport to be the precise language of the executing party.

**INTERROGATORY NO. 1:** Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint, and state the subject matter of the personal knowledge possessed by each such person.

**ANSWER NO. 1**: Major Antonio Williams - Detectives Wade, Robinson, and Smith met with Major Williams on numerous occasions complaining about the problems that we were having while working under Lt. John Mack and Sgt. Daryl Moore. He stated that he would take care of the problems, he just needed some time. He also stated that our meetings would remain confidential. Detectives Wade, Robinson, and Smith would return to the NWD and would be addressed by Lt. John Mack and Sgt. Darryl Moore. We were told by both of them that we could complain all we wanted to, but it would do no good. IF we did not like the way things were, then we could request to go to the patrol unit.

Major Antonio Williams knew the following, based on our meetings with him:

1. Black detectives were being treated better than the white officers. Black detectives' overtime slips were signed and sent through. White detectives overtime slips were scrutinized more, some were found in Lt. John Mack's desk and were never signed.

2. Detectives were told to randomly go into major stores on corners where shooting occurred and to grab people from inside of the stores and to bring them back to the NWD and interview them. When white detectives refused to do this, we were told by Lt. John Mack and Sgt. Darryl Moore that if we didn't like the way things were done, that we could

2

go back to the patrol unit.

3. Sgt. Darryl Moore would constantly ask the white detectives to walk out to the garage to settle things man-to-man if we didn't like the way he was running the shooting unit.

4. Sgt. Darryl Moore (under the direction of Lt. John Mack) re-assigned me to the robbery unit because I would not do illegal things during shooting investigations.

5. Sgt. Darryl Moore would constantly show the white detectives a photograph of an old squad of his. The photograph consisted of at least eight black officers and two white officers. Sgt. Darryl Moore would say that this is the type of squad that he would like to have.

6. Sgt. Darryl Moore would constantly say that he is "untouchable." He would say that he can say and do whatever he pleases and that nothing will happen to him because he knows people in high places. He also stated that we could complain all we want and that nothing would happen to him.

7. Sgt. Sonia Young had a "hacking" detail one evening. "Illegal taxis." Once the drivers were issued their moving citations, she had them transported to the NWD by a marked patrol unit so that detectives could interview them about any crimes they know. Detectives Wade and Robinson were working that night. I advised Sgt. Douglas Gardner that this was highly illegal and that we would not be involved with this. He stated that he

3

was not getting involved. Detectives Wade and Robinson advised the shift commander, Lt. John Dodson. He called Sgt. Young in and stopped the hacking detail. That evening, Sgt. Young contacted Lt. John Mack and advised him of our complaint. The next day, Detectives Wade and Robinson were chastised by Lt. John Mack and Sgt. Darryl Moore for trying to sabotage St. Young's hacking detail. After this incident, Det. Robinson was transferred to the robbery unit.

8. When a white detective was transferred from the unit, he was replaced with a black detective.

9. Although I was one of the senior officers in the squad, I was not asked/or assigned O.I.C. duties.

10. Det. Darryl Moore would say that only blacks can be discriminated against and that white people cannot be discriminated against.

11. Black detectives do not have to document the reverse side of O.T. slips, summarizing what work they did. White detectives must do so.

12. Detectives Wade, Smith, and Robinson were all eventually transferred from the shooting unit to the robbery unit. Sgt. Darryl Moore said this was because we were disloyal to Lt. John Mack.

**INTERROGATORY NO. 2**: Itemized and show how you calculate any damages claimed by you in this action, whether economic, non-economic, punitive, or other.

4

**ANSWER NO. 2**:  In reference to plaintiffs Robinson, Smith, and Wade, they were not appointed as O.I.C.'s even when comparably-placed or lower-seniority African Americans were appointed.  When defendant Sgt. Booker was not on duty, and if an African American was not available, then he would not appoint an officer in charge.  If an African American was available, then he would appoint that individual as the O.I.C. For example:

| | |
|---|---|
| October 27, 2001 | — No O.I.C. |
| October 28, 2001 | — No O.I.C. |
| October 29, 2001 | — No O.I.C. |
| November 10, 2001 | — No O.I.C. |
| November 11, 2001 | — No O.I.C. |
| November 17, 2001 | — No O.I.C. |
| November 18, 2001 | — No O.I.C. |
| November 19, 2001 | — No O.I.C. |
| November 25, 2001 | — No O.I.C. |
| December 9, 2001 | — African American O.I.C. |
| December 11, 2001 | — African American O.I.C. |
| December 17, 2001 | — African American O.I.C. |
| December 21, 2001 | — African American O.I.C. |
| December 22, 2001 | — No O.I.C. |
| December 23, 2001 | — African American O.I.C. |
| December 24, 2001 | — African American O.I.C. |
| December 31, 2001 | — African American O.I.C. |
| January 4, 2002 | — African American O.I.C. |
| January 6, 2002 | — No O.I.C. |
| January 8, 2002 | __ African American O.I.C. |
| January 14, 2002 | __ African American O.I.C. |
| January 19, 2002 | __ African American O.I.C. |
| January 20, 2002 | __ African American O.I.C. |
| February 24, 2002 | — African American O.I.C. |
| March 3, 2002 | — African American O.I.C. |
| March 11, 2002 | — African American O.I.C. |

March 17, 2002     — No O.I.C.
March 30, 2002     — African American O.I.C.
March 31, 2002     — No O.I.C.
April 4, 2002     — No O.I.C.
April 5, 2002     — African American O.I.C.
April 8, 2002     — African American O.I.C.
April 9, 2002     — African American O.I.C.
April 10, 2002     — African American O.I.C.
April 13, 2002     — No O.I.C.
April 14, 2002     — No O.I.C.
July 14, 2002     — African American O.I.C.
July 16, 2002     — African American O.I.C.
July 17, 2002     — African American O.I.C.
July 21, 2002     — No O.I.C.
July 27, 2002     — African American O.I.C.
July 28, 2002     — African American O.I.C.
July 31, 2002     — African American O.I.C.
August 1, 2002     — No O.I.C.
August 2, 2002     — African American O.I.C.
August 3, 2002     — African American O.I.C.
August 4, 2002     — No O.I.C.
August 9, 2002     — No O.I.C.
August 10, 2002     — African American O.I.C.
August 11, 2002     — No O.I.C.
August 12, 2002     — African American O.I.C.
August 17, 2002     — No O.I.C.
August 18, 2002     — No O.I.C.
August 25, 2002     — African American O.I.C.
August 31, 2002     — African American O.I.C.
September 1, 2002     — African American O.I.C.
September 6, 2002     — No O.I.C.
September 9, 2002     — African American O.I.C.
September 10, 2002 — African American O.I.C.
September 14, 2002 — No O.I.C.
September 15, 2002 — African American O.I.C.
September 23, 2002 — African American O.I.C.
September 28, 2002 — No O.I.C.
September 29, 2002 — African American O.I.C.

6

October 4, 2002 — African American O.I.C.
October 5, 2002 — African American O.I.C.

(See previously submitted Exhibit R.)

After plaintiffs filed the present lawsuit, Sgt. Booker began to appoint Det. Robinson to the O.I.C. position, as evidenced on March 10 and 16 of 2003. (See previously submitted Ex. R.) These are the only time sheets available to plaintiffs at this time. However, this conduct is prevalent in all relevant times. Additional charges to be calculated.

**INTERROGATORY NO. 3**: For each witness you have retained or specially employed to provide expert testimony in this case, and whom you expect to testify at trial, provide a complete statement of the opinions to be expressed; basis and reasons therefore; and whether said expert witness has ever been disqualified as an expert witness in an employment discrimination case.

**ANSWER NO. 3**: None.

**INTERROGATORY NO. 4**: If you have ever made a formal claim, charge, or complaint of discrimination or harassment of any kind, with any employer (including your present employer), please set forth the date and place it was made, the name and address of the employer against whom it was made, the basis of the claim, and the ultimate disposition thereof.

**ANSWER NO. 4**: None, outside of the present case.

7

**INTERROGATORY NO. 5**: Fully identify each act or omission by the Baltimore Police Department, its employees or agents, which you contend constitutes discrimination, harassment, and/or retaliation, identifying when each such act or omission occurred, all persons who have knowledge of the act or omission, and any documentation in your possession relating to any act or omission.

**ANSWER NO. 5**: Please see answer Nos. 1 and 2. Furthermore, in addition to exhibits and previous and subsequent answers, the Baltimore Police Department E.E.O.C. failed to investigate, and/or interview anyone in reference to this E.E.O.C. complaint. We were interviewed and once a determination of 'unfounded' was made, we were allowed to address Det. Staggers and Sgt. Weinrich of E.E.O.C. of their findings. Dets. Wade and Robinson asked both of them if they had interviewed anyone in reference to this complaint. Det. Staggers replied, "No," that he didn't have to. "The complaint was unfounded."

We spoke to lieutenants and majors, but the problem was never corrected.

Regarding Major Antonio Williams — please see previously submitted Exhibit B, #12 and #13.

Major Deb. Owens — Meeting with her about OIC and green sheet. Her first words before anyone spoke, "You need to get over the EOC complaint. You lost and it's over."

Lt. Michael Newton — I told him about the statement that offended me by Sgt.

8

Young. His reply was, "I wasn't working. If you go through with this, you could get Sgt. Booker in trouble."

Sgt. Young — Racial statement. Also, I was ordered to do interviews on illegal stops (see previously submitted Ex. B, #6). She accused me via Lt. Newton about sabotaging her computer disk. Additionally, she wrote me up on an IIR for changing the roll book, and I was denied funeral detail by her.

Sgt. D.C. Moore — Please see previously submitted Exhibit B. He said numerous times that "blacks" can't discriminate. Additionally, he would often point to a picture on his desk (please see previously submitted Exhibit L) and state, "This is the kind of squad I want." When I asked what he meant, he said, "You know what I mean." Furthermore, Sgt. D.C. Moore would frequently verbally threatened to go outside to fight. This answer may be supplemented at a later time.

Lt. John Mack — He would call me into his office and accuse me of slander. He ordered (dates unknown) unlawful actions. For example: remove people from the street to talk about shootings (against their will). I was removed from shootings to robbery due to questioning about unlawful orders. He ordered me to give detailed accounts on overtime slips, which most African-Americans did not have to do. This is all I recall at this time.

Sgt. Young has stated that she refuses to work with, or does not like working with light-skinned people. She has also stated to a supervisor that, "You are going to make me

9

give this overtime to a No. 2, aren't you?"  Sgt. Young has been suspended for fifteen (15) days for assaulting an O.I.C. and making such comments as, "What are you going to do - get the Klansmen after me?"

Defendant D. C. Moore has made statements such as, "Blacks cannot be racist," "You cannot be discriminated against until you have been oppressed," and when pointing to a photograph of a predominantly African American police squad, stated, "This is the type of squad that I want."

In reference to plaintiffs' grievances, defendant Mack has stated, "There is nothing you guys can do to me because I have people in this department, friends up there," referring to African American supervisors as Deputy Commissioner Barry Powell and Col. Hawkins.  (See Ex. B for additional information.)

On numerous occasions, I would request overtime under Sgts. Booker and Moore. These requests were denied and then the same overtime would be granted to African-American officers.  Overtime that I worked was questioned, and I was required to document what the overtime was used for and what case was worked on. The African-American officers could turn in blank or almost blank slips with no supporting documentation and their overtime would be granted.  In addition, once approved, my overtime was held and I would not get paid on that overtime for several weeks.

Plaintiff Smith had requested, approved, and scheduled holidays.  Defendants,

acting with racial animus, canceled the holidays and then allowed African-American officers to take off that day and shift.

Defendants had a meeting with Major Williams in reference to all grievances herein stated, as well as in reference to all exhibits attached, and explained to Major Williams that they were working in a hostile racial environment. Major Williams's response was that he would investigate the concerns of plaintiffs and, if he could not resolve them within thirty (30) days, that he, himself, would leave the unit. (See Exhibit B.)

In addition, once plaintiff made his grievances known, defendants (in addition to previous answers and exhibits), transferred plaintiff from the unit against his wishes, submitted evaluations lower than were accurate, and caused plaintiff to encounter loss of employment, advancement, and overtime.

**INTERROGATORY NO. 6**: If you contend that any employee(s) of the Baltimore Police Department ever made any statement about any person or committed any act which you claim supports your allegations of discrimination, harassment, retaliation, or any other allegations in your Complaint, then set forth all details, including but not limited to, the identity of the employee(s), the time, place, and exact nature of the act or statement, the names of all persons who were present, and your source of knowledge.

**ANSWER NO. 6**: See answer to No. 5.

**INTERROGATORY NO. 7**: If you, or anyone acting on your behalf, obtained

11

statements in any form from any person regarding any of the facts alleged in your Complaint, fully identify each such person and state the date on which such statement(s) was taken, the names and addresses of the persons who took such statement(s), a transcript of each recorded oral statement, and a detailed summary of each such non-recorded oral statement.

**ANSWER NO. 7**:  None.

**INTERROGATORY NO. 8**:  Itemize all expenses and other economic damages, past and future, that you claim are a result of the occurrence and as to each item claimed, identify the item, the amount claimed for that item, the method, if any, by which you computed the amount, the figures used in that computation, and the facts and assumptions upon which your claim is based.

**ANSWER NO. 8**:  See answer No. 2.

**INTERROGATORY NO. 9**:  State whether you claim past or future loss of earnings or earning capacity as a result of the occurrence and, if so, state for each category the amount claimed, the method by which you computed that amount, the figures used in that computation, and the facts and assumption upon which your claim is based.

**ANSWER NO. 9**: For past earnings, see answer No. 2, above.  Additional charges to be calculated.  Future damages also to be calculated.

**INTERROGATORY NO. 10**: If you submitted a grievance through the Baltimore

12

Police Department's grievance procedures regarding any matter set forth in your Complaint, for each such grievance, please describe the substance of the grievance, identify any person with whom you discussed your grievance, the date of each discussion, each action taken pursuant to each discussion, the substance of each conversation, whether an investigation was undertaken into your grievance, the substance of any reports written regarding your grievance, and person who considered or reviewed your grievance and their decision regarding your grievance.

**ANSWER NO. 10**: See grievance forms and exhibits from E.E.O.C. and E.E.O.

**INTERROGATORY NO. 11**: If you contend that you have been denied overtime opportunities during your employment with the BPD, please state in detail all such facts supporting your contention.

**ANSWER NO. 11**: N/A.

**INTERROGATORY NO. 12**: If you contend that your requests for overtime payments during your employment with the BPD were denied, delayed, or discounted, please state in detail all such facts supporting your contention.

**ANSWER NO. 12**: My overtime was scrutinized and delayed getting in on time. Sgt. Darryl Moore would always say, "Don't worry, you'll eventually get paid." Overtime slips are to be submitted in a timely fashion, but mine were not.

**INTERROGATORY NO. 13**: If you contend that during your employment with

the BPD you were provided less favorable leave benefits than similarly-situated African-Americans, please state in detail all such facts supporting your contention.

**ANSWER NO. 13**: N/A.

**INTERROGATORY NO. 14**: If you contend that during your employment with the BPD you were denied educational or study review opportunities, please state in detail all such facts supporting your contention.

**ANSWER NO. 14**: N/A.

**INTERROGATORY NO. 15**: State all facts upon which you rely to support your contention, in Paragraph 28 of the Complaint, that "Plaintiffs were continually denied leave, details, promotions, supervisory positions and pay, and are subjected to harassment and disparate treatment because of their race, despite the fact that they are qualified and in similar (sic), if not more tenured positions."

**ANSWER NO. 15**: See answer to No. 12.

**INTERROGATORY NO. 16**: State all facts upon which you rely to support your contention, in Paragraph 33 of the Complaint, that "Plaintiffs were denied promotion, promotional opportunities, and equal treatment, and given involuntary transfers and demotions, and subjected to harassment and disparate treatment because of their race and/or gender, and/or because they complained about the discriminatory treatment , or illegal activities."

14

**ANSWER NO. 16**: See answers to Nos. 1 and 12.

**INTERROGATORY NO. 17**: If you contend that you complained to any person(s) employed by the Baltimore Police Department of any event of unlawful discrimination, harassment, and/or retaliation, please state the substance of your complaint(s), the date of your complaint(s), whether an investigation(s) regarding your complaint(c) occurred, and identify the person(s) to whom you complained, and the documents you possess which support your contention.

**ANSWER NO. 17**: See answer to No. 1.

**INTERROGATORY NO. 18**: Do you know of any statement, conversation, comment report or admission against interest or *res gestae* statement made by any Defendant in this action, concerning the subject matter of this action or facts relevant to any issue in this case. If your Answer is "yes," state the content of said statement, conversation, comment or report, the place where it took place, the name, address and telephone number to whom each statement was made, and in whose presence it was made.

**ANSWER NO. 18**: See answer to No. 1.

**INTERROGATORY NO. 19**: If you contend that you have been retaliated against for exercising your First Amendment rights, please describe the context of your communication(s), including but not limited to, the substance of your communication(s), the date of your communication(s), how you communicated (orally or in writing), and

15

identify the recipient of your communications(s) and witnesses thereto.

**ANSWER NO. 19**:  See answer to No. 1.

I HEREBY CERTIFY, declare and affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my information, knowledge and belief.

_____
Chris Wade

*          *          *

_____
Duane A. Verderaime
Verderaime & DuBois, P.A.
1231 North Calvert Street
Baltimore, Maryland 21202
(410) 752-8888

Attorneys for Plaintiffs

17