IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND

**GREGORY ROBINSON, et al.,**

    **Plaintiffs,**

v.                                                                                        Case No.: WDQ-02-3236

**BALTIMORE POLICE DEPARTMENT, et al.,**

    **Defendants.**

**DEFENDANT BALTIMORE POLICE DEPARTMENT'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant, Baltimore Police Department ("BPD"), by and through its undersigned attorneys, files this Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, and in support thereof states that, Plaintiffs have not identified any facts or supported any of the allegations sufficiently to overcome the Department's summary judgment motion. The Baltimore Police Department (the "BPD") will reply to the Plaintiffs' response *in seriatim*.

**I.   GENERAL FAILURE TO FILE OMNIBUS JOINT MOTION**

The Plaintiffs' response consumes three (3) pages regarding the BPD's failure to file an Omnibus Joint Motion for Summary Judgment. While it is true that the Defendants separate motions raise and address many of the same arguments and defenses, the Plaintiffs have not identified any prejudice suffered by them individually or collectively as a result of the failure to file an omnibus joint motion. In fact, the Plaintiffs' response "address[es] the motion filed by all defendants." Plaintiffs' Response p. 6. In addition, the Court's November 13, 2003 Order only states that January 16, 2004 was the deadline for filing an Omnibus Joint Defendants' Motion for Summary Judgment. Plaintiffs however cite no legal

1

authority or federal rule requiring a joint omnibus be filed. A copy of the Court's November 13, 2003 Order is attached hereto as **Exhibit 1** and is incorporated by reference herein. There is no mandate from the Court or the November 13, 2003 Order requiring that an omnibus motion be filed. The Defendants properly filed motions for summary judgment pursuant to the Court's January 23, 2004 deadline and such motions are properly before this Court.

## II.  LEGAL ANALYSIS

### A.  Plaintiffs' Title VII Claims

The BPD's motion sets forth the appropriate standard for consideration of motions for summary judgment. Assuming all of the allegations of the Plaintiffs' Complaint are true, the Plaintiffs have failed to demonstrate any record evidence of the elements necessary to prevail on their Title VII claim against BPD. In addition the Plaintiffs, as a matter of law, are unable to prevail on their § 1983 discrimination and retaliation claims.

In order to prevail under a Title VII claim against an employer, the Plaintiffs must show that the harassment was "(1) unwelcome; (2) based upon race; (3) sufficiently severe or pervasive to alter the conditions of the employment and create an abusive atmosphere. Causy v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Citations omitted). Plaintiffs' bald assertions are not sufficient to prevail against the BPD's motion for summary judgment. Assuming elements 1 and 2 are proven, the record to date contains no testimony that altered the conditions of their employment and created an abusive atmosphere.

In order to prevail against the employer under Title VII, the Plaintiffs must demonstrate that the actions of the agents of the BPD, i.e. the Plaintiffs' supervisors, resulted in a "tangible employment action", irrespective of whether the employer knew or

should have known of the actions. The law is well settled that a "tangible employment action" is one, which is defined to include "any significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." See Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996); Harlston v. McDonnell Douglas Corp., 37 F.3d 379 (8th Cir. 1994); Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir. 1994); Savino v. C.P. Hall Co., 199 F.3d 925 (7th Cir. 1999). "Bruised egos, reassignment to a less convenient job, or demotions without change in pay, duties, benefits or prestige is insufficient to establish a tangible job detriment." Kocsis, 97 F.3d at 887.

In the instant case the record is devoid of any evidence that any of the Plaintiffs suffered an "adverse" or "tangible employment action." None of the Plaintiffs were fired, demoted, or reassigned to less prestigious positions. As correctly noted by the Plaintiffs, when there is no tangible employment action, the employer has an affirmative defense to the claims of vicarious liability.

In sole support of their Title VII claims, the Plaintiffs allege that the BPD "failed to complete the investigation within the 60 day requirement under the Department's general orders." Plaintiff's Response, page 13, ¶ 2. Plaintiffs further respond that the BPD only interviewed the Plaintiffs with regard to their EEO complaints and failed to interview other individuals as part of their investigation. Plaintiffs' Response, page 13, ¶ 3. Where as here, the Plaintiffs cite discretionary portions of the BPD's General Orders, such claims will not defeat Defendant BPD's motion for summary judgment.

With regard to the Plaintiffs' claim that the BPD failed to complete its investigation within the sixty (60) day limit provided for in its General Order, the Plaintiffs have failed to demonstrate why any extension of the sixty day time limit was prejudicial to them. The undisputed record testimony of Joan Thompson, Director of EEO Compliance for the BPD revealed that the sixty (60) day time limit "was not a logical time frame to investigate a case. . . . That the general order was written before there was even an EEO section." Thompson Depo. Tr. p. 17, lines 10-19.

Ms. Thompson testified that she came to the BPD in 2000. Thompson Depo. Tr. p. 5, line 17. Ms. Thompson who previously served as Assistant Commissioner of the EEO unit of the New York Police Department for four (4) years. Depo. Tr. p. 7, lines 1-6; served as an investigator in employment and housing discrimination, where she became a supervisor and then led the unit;. Thompson Depo. Tr. p. 8, lines 10-14; completed and received certification in EEO studies from Cornell University. Thompson Depo. Tr. p. 9, lines 3-4. Director Thompson's 20 plus years of knowledge and experience in the EEO arena, supports her statement that "EEO complaints cannot be completed in 60 days. . . . You have one possibly you can do it in 60 days. If you have 40 or 50 in the unit at one time it is nearly impossible." Thompson Depo. Tr. 19, lines 2-7.

When the General Order was revised and implemented on March 12, 2002, the time limit to investigate a complaint of discrimination was extended to provide the EEO office with one year to investigate claims. Thompson Depo. Tr. p. 17, lines 3-4. Ms. Thompson's expertise in the are of EEO matters, prompted her to change the policy of BPD to extend the time to one year within which EEO complaints must be concluded.

4

The Plaintiffs have conveniently failed to inform the Court that part of the extension of the sixty days was directly attributable to the action of the Plaintiffs, specifically Plaintiff Robinson. The Plaintiffs' EEO complaint was filed with the BPD on April 23, 2001. Staggers Deposition Transcript p. 9, lines 8-12 (hereinafter "Staggers Depo. Tr."). A copy of Detective Staggers deposition is attached hereto as **Exhibit 2** and is incorporated by reference herein. On May 11, 2001 Detective Staggers interviewed the Plaintiffs regarding their complaint. Staggers Depo. Tr. p. 9, lines 14-18. Upon completion of the interviews, Detective Staggers concluded that the allegations contained in the Plaintiffs' complaint were unfounded or "not valid." Staggers Depo. Tr. p. 18, lines 8-17. Upon concluding the Plaintiffs' interviews on May 11, 2001, Detective Staggers was prepared to administratively close the case as unfounded. Depo. Tr. pp 21-22, lines 1-11; p. 35, lines 6-12. However, supplemental Plaintiffs' interviews were requested when Plaintiff Robinson complained regarding Staggers' investigative techniques. Plaintiffs cannot then complain that the BPD extended the investigation beyond the sixty day time period.

With regard to the Plaintiffs' allegations that the BPD's investigation was faulty because no one other than the Plaintiffs were interviewed, this allegation is also specious. In support of their claim that the BPD failed to competently complete an investigation into the Plaintiff's claims, the Plaintiffs cite Detective Staggers' deposition transcript wherein he is asked "Is there any reason why [the plaintiffs] were not interviewed until September?" and responds that he "concluded that the case was going to be administratively closed or unfounded." Staggers Depo. Tr. p.34, lines 10-15.

As stated previously, interviews of the Plaintiffs were concluded on May 11, 2001. Supplemental interviews were conducted on September 11, 2001. Staggers Depo. Tr. pp. 9-

5

21. Plaintiffs mischaracterize the testimony of Detective Staggers and attempt to have the Court believe that no investigation of the Plaintiffs' claims occurred prior to September 11, 2001. No record evidence exists that Defendant BPD failed to conduct a proper investigation.

### A.  Section 1983 and Retaliation Claims

In order to prevail on their § 1983 claims of discrimination and harassment, the Plaintiffs must satisfy the prima facie burden established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Specifically, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse [employment] action; (3) that at the time of the adverse employment action the employee was performing his or her job at a level which met the employer's legitimate expectations; and 4) the unlawful action gave rise to an inference of discrimination, i.e. race. McDonnell Douglas, 411 U.S. at 802; See also: Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999). The Plaintiffs are required to show they were "treated less favorably than others because of their race, color, sex, religion, or national origin." Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977).

Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for any adverse actions taken against the employee. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-08; McDonnell Douglas, 411 U.S. at 803. It is not enough to "disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." St. Mary's Honor Center, 509 U.S. at 519.

If the employer proffers a legitimate, nondiscriminatory reason for its actions, the plaintiff then has the ultimate burden of persuasion to demonstrate "by competent evidence

that the presumptively valid reasons for the adverse actions were in fact a cover-up [pretext] for a discriminatory action." McDonnell Douglas, 411 U.S. at 805. In order to survive summary judgment, "the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification." Vaughan v. Metrahealth Companies, 145 F.3d 197, 202 (4th Cir. 1998), rev'd on other grounds)). Given this backdrop, Plaintiffs claims must fail as a matter of law. See McDonnell Douglas, 411 U.S. at 805.

### 1. Officer-in-charge assignment

First, the Plaintiffs have offered no record evidence to date to support their claims that they were more qualified, by either seniority or other experience, than those appointed as officer-in-charge. Contrary to Plaintiffs' assertions, the records fails to support Plaintiffs' blanket statement that African Americans were appointed as a result of a racially based system of favoritism. Plaintiffs' Exhibits 1 through 3, Plaintiffs' Robinson, Smith and Wade's Answers to Interrogatories, only provides information of the assigned officer-in-charge for six (6) days for the month of October 2001, three (3) days for the month of November 2001, seven (7) days for the month of July 2002; sixteen (16) days for the month of August 2002, thirteen (13) days for the month of September 2002 and two (2) days for the month of October 2002. However, the Plaintiffs do not provide any information regarding OIC designations for any period of time prior to April 23, 2001, the date of the filing of their EEO claims with the BPD, or sufficient information for the time period of May 2001 through July 2002, the date of the filing of the Plaintiffs' Complaint in the instant case. The record evidence is insufficient to establish a pattern of discrimination among the BPD regarding officer-in-charge assignments and enter judgment on behalf of the BPD for the Plaintiffs'

7

failure to demonstrate genuine issues of material facts regarding the officer in charge assignments.

With regard to Plaintiff Robinson's statement that "he was assigned OIC time after the complaint was filed," BPD's roll books demonstrate that Plaintiff Robinson, as well as Plaintiffs Wade and Smith, were assigned OIC duties *both before and after* the complaint was filed. As to Plaintiff Cheuvront, she did not request and therefore was not assigned OIC time.

Section III of the BPD's General Order 69-77 regarding officer-in-charge designations provides supervisors with guidance as to additional criteria to review when appointing an officer-in-charge. "Where possible the immediate supervisor **may and should** rotate OIC assignments among his most capable officers to avoid developing an indispensable officer by concentrating on only one individual." (Emphasis added). Plaintiffs' Exhibit 4. Because the General Order uses discretionary language in "may" and "should" as opposed to "must" and "shall", it is obvious that the supervisors are provided some latitude in assessing and appointing officers-in-charge. The Plaintiffs have failed to provide information regarding whether or not the African Americans appointed as officers-in-charge fulfilled the BPD's criteria as set forth in BPD's General Order 69-77, were more experienced than the Plaintiffs, or if an officer-in-charge was even necessary on the days one was not appointed. As such, Plaintiffs have again failed to identify a genuine issue of material fact.

Finally, the Plaintiffs offer inconsistent evidence regarding their OIC designations. Plaintiff Smith's sworn deposition testimony directly controverts the allegations that the Plaintiffs were not given OIC assignments. Plaintiff Smith's testimony not only controverts

that of the other Plaintiffs, but also supports the BPD's defense that the Plaintiffs were given OIC assignments and not discriminated against. Plaintiff Smith testified under oath that Sergeant Moore "recognized seniority and he [Smith] got OIC time, but then after he [Defendant Moore] had left I wasn't receiving OIC time at all." Smith Depo. Tr. p. 177, lines 13-18. However, the testimony of Plaintiffs Robinson and Wade was that the supervisors failed to designate the Plaintiffs as OIC. Complaint, ¶ 8. Finally, Plaintiff Cheuvront never "sought out officer-in-charge assignments." Cheuvront Depo. Tr. p. 58, lines 10-12.

The Plaintiffs are unable to meet the burden set forth in the <u>McDonnell Douglas</u> test for racial discrimination by failing to show that they suffered adverse employment actions regarding OIC designations, or that the assignment of other officers as officer-in-charge was based upon their race. Alternatively, the Plaintiffs have failed to offer a response to the BPD's nondiscriminatory rationale that officer-in-charge designations were provided on the basis of seniority. BPD's Motion for Summary Judgment p.18. Given the fact that the Plaintiffs offer inconsistent testimony, and the evidence provided, even if assumed as true, fails to establish a *prima case* of discrimination, the BPD is entitled to judgment as a matter of law.

2. <u>Scrutinizing of Overtime Slips</u>

Plaintiffs' Exhibits 6 and 7 in support of their response, support the BPD's position that all officers, not just the Plaintiffs, were required to provide documentation regarding overtime. First, Exhibit 6, which was identified by the Plaintiffs as their overtime sheets, also included overtime sheets for alleged comparators. Exhibit 6 demonstrates that the comparators, as well as the Plaintiffs, provided detailed explanations for the requested

9

overtime. The Plaintiffs' Exhibit 6 is also consistent with Detective Staggers' sworn deposition testimony wherein he concluded after his investigation of the Plaintiffs' EEO complaint that "black officers as well as the white officers or detectives were documenting their overtime on the back. Now, I noticed that it wasn't consistent but it wasn't consistent among either black or white." Staggers Depo. Tr. p. 15, lines 20-21 – p.16, lines 1-3.

The same is true for Plaintiffs' Exhibit 7. Specifically Detectives Manuel (Caucasian), Barkas (Caucasian), Swanson (African American), and Nicholson's (African American) overtime slips include documentation regarding the request for overtime. While the explanations of some of the comparators are not as lengthy as those provided by the Plaintiffs, Detective Lansey's documentation is more extensive than that provided by the Plaintiffs. It therefore stands to reason that all of the officers knew of the requirement to document the reasons for overtime and did so. Some officers were more thorough than others, but all documented the overtime from time to time and all were paid. Therefore, there is no genuine issue of material fact regarding the Plaintiffs' allegations regarding the scrutinizing of overtime, and the BPD is entitled to judgment as a matter of law.

3. <u>Racial comments</u>

The Plaintiffs' next response to Defendant BPD's motion takes issue with a comment made by Defendant Young "regarding light skinned people" and made in the context of a private conversation between two African American officers. Robinson Depo. Tr. I p. 118, lines 3 – 19. Plaintiff Robinson has offered no evidence to indicate that the comment referred to him, and in fact his testimony contravenes any inference of discrimination. Robinson Depo. Tr. I, pp. 119, lines 6-21 – 120, lines 1-12. The comment was made to one of the two other parties Defendant Young was speaking with.

10

Young Deposition Transcript p. 81, lines 8-13 (hereinafter "Young Depo. Tr."). A copy of Defendant Young's deposition transcript is attached hereto as **Exhibit 3** and is incorporated by reference herein.

There is no record evidence that the BPD authorized or condoned the statement. Liability will not attach to the BPD for the comments made between employees holding a private conversation and overheard by another third party employee.

There had been no prior and no subsequent racial statements made by Defendant Young to Plaintiff Robinson. Robinson Depo. Tr. I, pp. 119, lines 6-21 – 120, lines 1-12. The fact that Plaintiff Robinson was offended by the comment does not lend itself to a genuine issue of material fact for two reasons. First, the Fourth Circuit Court of Appeals has previously held that "isolated incidents or offhand comments, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment" necessary sustain a Title VII violation. Lissau, 159 F.3d at 183 (citing Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283 (1998)).

Second, assuming that an isolated comment or incident was sufficient, the Plaintiffs have not overcome their burden of persuasion and provided evidence to overcome Defendant Young's or the BPD's legitimate explanation surrounding the comment. Defendant Young testified that her comment was not directed at Plaintiff Robinson, but to one of the other persons she was conversing with. Young Depo. Tr. p. 81, lines 8-13; p. 83, lines 1-7. Once the Defendant provided a nondiscriminatory reason for the comment, the burden shifts back to the Plaintiff to provide evidence to persuade the court that the reason given is actually pretext. McDonnell Douglas, 411 U.S. at 805. The Plaintiffs have not provided any evidence to show that the nondiscriminatory reason given by Defendant Young was pretext. Plaintiff

Robinson merely states that "[s]he said it, it offended me. If they weren't offended, that's them. I don't answer for them. I'm telling you I was offended." Robinson Depo. Tr. p. 171, line 19 – p. 172, line 4. However, the offense of Plaintiff Robinson to the statement, whether genuine or not, is insufficient to form a basis for compensable discrimination and the BPD is therefore entitled to judgment as a matter of law.

    4.    <u>Other Discriminatory Treatment by Defendants</u>

Plaintiffs next respond to the BPD's motion for summary judgment by stating that "in December 2000 Plaintiffs Smith and Wade were denied three K-days and informed that no one was allowed off during New Year's Eve. Plaintiffs' Response p. 10, ¶ 2. As part of the EEO investigation Detective Staggers learned that the Police Commissioner canceled all leave for the New Year's Eve holiday. Staggers Depo. Tr. p. 86, lines 4-7. Because Plaintiffs Smith and Wade's leave was canceled, he wanted to work the day shift, however, the officers who were originally scheduled to work the day shift maintained their day shift and the Plaintiffs maintained their night shift. Staggers Depo. Tr. p. 86, lines 86, lines 16-21, p. 87, lines 1-4.

Plaintiffs next allege that on March 16, 2001 Plaintiff Robinson requested a detail for a police funeral, which was denied and later offered to African American officers." Plaintiffs' Response page 10, ¶ 2. Defendant Young initially did not recall the incident, but Plaintiff Robinson acknowledges that he was given the requisite time to attend the funeral, although in the end he chose not to take it. Robinson Depo. Tr. p. 270, lines 4-19. Detective Staggers also testified that Plaintiff Robinson did in fact receive the "detail" because he was allowed to leave two hours early and come to work the following shift two hours late. Staggers Depo. Tr. p. 68, lines 3-6.

12

Plaintiffs' allegations that under Defendant Moore's supervision "white Detectives have been transferred, detailed (as punishment) or asked to leave the squad" is also unfounded. Plaintiffs' Memorandum pp. 10-11. Plaintiffs' Memorandum attempts to detail the transfers of various detectives in and out of the CID unit. But the self-serving dissertation by the Plaintiffs regarding the transfer of officers into and out of the CID unit is not illustrative of any discrimination suffered by the Plaintiffs sufficient to rebut the nondiscriminatory explanation provided by Defendant Mack regarding transfers of the Plaintiffs throughout the CID unit. Specifically, Defendant Mack testified that officers were moved from the shooting division to provide support to the robbery division, which was shorthanded when an officer transferred out and another officer was out on medical. Mack Deposition Transcript p.51, lines 16-21; p. 52, lines 13-21; p. 53, lines 1-5 (hereinafter "Mack Depo. Tr."). In addition, Defendant Mack testified that the transfer was based upon recommendations that he received from the sergeants, and therefore the decisions to transfer detectives, including the Plaintiffs, was not arbitrary or discriminatory. Id.

Contrary to the Plaintiffs' assertions that the allegations outlined above demonstrate a hostile work environment and disparate treatment, the prevailing case law holds the exact opposite. Neither the Plaintiffs' isolated perceived racial comments nor the supervisors' transfers of the Plaintiffs from one division to another in the CID unit, without more, rise to the level of an adverse employment action. See Huang v. Board of Governors, 902 F.2d 1134, 1142 (4th Cir. 1990); Darnell v. Campbell County Fiscal Court, 731 F.Supp. 1309, 1313 (E.D.Ky. 1990), aff'd 924 F.2d 1057 (6th Cir. 1991). None of the Plaintiffs were fired, suspended, demoted and none of the transfers resulted in a reduction of pay or responsibilities. None of the individual defendants' actions are sufficient to overcome the

13

standards set forth in this and other federal courts' decisions sustaining Title VII discrimination claims.

### III. CONCLUSION

Fed.R.Civ.P. 56(c) provides for the entry of summary judgment to the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. Pulliam Invest. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). In considering the defendant's motion, the court views the underlying facts and all reasonable inferences drawn there from in the light most favorable to the plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986).

The Plaintiffs' Complaint is void of any specific dates and times of the alleged acts of discrimination and retaliation by the Defendant BPD. In addition, no affidavits have been provided by the Plaintiffs to support the allegations contained in the Complaint. Likewise the Plaintiffs' answers to interrogatories do little to specify and identify any acts of discrimination by Defendant BPD towards the Plaintiffs. Finally, the deposition testimony set forth in the Plaintiffs' Memorandum when not self serving was inaccurate in that it was taken out of context and did little to bolster the Plaintiffs' allegations. The Plaintiffs have been unable to demonstrate why liability would be imputed to BPD when the individual actions of the Defendants were not ordered or condoned by the BPD. The BPD did

everything both formerly through its EEO investigation as well as informally by the Plaintiffs' senior commanding officer, to address the Plaintiffs' concerns.

_____
Kim Y. Johnson, Federal Bar No.: 22447

_____
Peter Saar, Federal Bar No.: 26666
Baltimore Police Department
Office of Legal Affairs
242 W. 29th Street
Baltimore, Maryland 21211-2908
Telephone: (410) 396-2496

Attorneys for Defendant
Baltimore Police Department